PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 16-2653

———————

JAIME GONZALEZ; PATRICIA WRIGHT; KEVIN WEST;
GERALD BOEHM; EDWARD MAAG; DIANE MAAG,
on behalf of themselves and all others similarly situated,
Appellants

v.

OWENS CORNING; OWENS CORNING SALES LLC

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-13-cv-01378)
District Judge: Honorable Joy Flowers Conti

———————

Argued September 6, 2017
Before: CHAGARES, JORDAN, and HARDIMAN,
*Circuit Judges*.

(Opinion Filed: March 19, 2018)

Robert H. Klonoff  [Argued]
Jordan D. Schnitzer Professor of Law
Lewis & Clark Law School
Earthrise Law Center
10015 Southwest Terwilliger Boulevard
Portland, OR 97219

Charles E. Schaffer
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Shanon J. Carson
Lawrence Deutsch
Berger & Montague
1622 Locust Street
Philadelphia, PA 19103

Charles J. LaDuca
Cuneo Gilbert & LaDuca LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814

Michael A. McShane
Audet & Partners
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102

Robert K. Shelquist
Lockridge Grindal Nauen PLLP
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
        *Attorneys for Appellants*

Carter G. Phillips [Argued]
Sidley Austin
1501 K Street, N.W.
Washington, D.C. 20005

Kara L. McCall
T. Robert Scarborough
Tacy F. Flint
Elizabeth M. Chiarello
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

Arthur H. Stroyd, Jr.
Del Sole Cavanaugh Stroyd
Three PPG Place
Suite 600
Pittsburgh, PA 15222
      *Attorneys for Appellees*

Allan P. Ides
Simona Grossi
Loyola Law School
919 Albany Street
Los Angeles, CA 90015

Michael J. Quirk
Williams Cuker & Berezofsky
1515 Market Street, Suite 1300
Philadelphia, PA 19102
      *Attorneys for Appellants' Amici Curiae*

## OPINION OF THE COURT

HARDIMAN, *Circuit Judge*.

This appeal involves a putative class action brought by consumers in four states who alleged that Appellees Owens Corning and Owens Corning Sales, LLC (collectively, Owens Corning) sold defective roof shingles and misrepresented the shingles' expected useful life. Appellants challenge an order of the United States District Court for the Western District of Pennsylvania denying class certification. We will affirm.

I

In 2009, Appellants Patricia Wright and Kevin West filed suit in the District Court under Rule 23 of the Federal Rules of Civil Procedure on behalf of a proposed nationwide class of individuals who "owned, own, or acquired" structures on which certain Owens Corning-manufactured roofing shingles "are or have been installed since 1986." *Gonzalez v. Owens Corning*, 317 F.R.D. 443, 455 (W.D. Pa. 2016). Wright and West claimed that Oakridge shingles—an Owens Corning brand of fiberglass asphalt roofing shingles—are "plagued by design flaws that result in cracking, curling and degranulation" and "will eventually fail, causing property damage, and costing consumers substantial removal and replacement costs." *Id.* at 455. The District Court entered summary judgment in favor of Owens Corning, finding that Wright and West's claims had been discharged in bankruptcy by the 2006 confirmation of Owens Corning's reorganization plan. We partially reversed, concluding that the claims were not discharged. *See Wright v. Owens Corning*, 679 F.3d 101, 108–09 (3d Cir. 2012). After the case was remanded to the

District Court, Appellants Jaime Gonzalez, Gerald Boehm, and Edward and Diane Maag (together with Wright and West, Plaintiffs) filed three similar suits in district courts in other states, which were then transferred to the Western District of Pennsylvania and consolidated with Wright and West's case.

Plaintiffs are homeowners from Pennsylvania, Illinois, Texas, and California, on whose roofs Oakridge shingles were installed prior to 2006. They allege that their shingles have not performed as promised because they were manufactured "in accordance with defective design specifications." *Gonzalez*, 317 F.R.D. at 450. Of the named plaintiffs, three reported property damage and two had their roofs reshingled. The shingles were all subject to warranties of 25 years or more, which Plaintiffs argue amounted to affirmative representations about the shingles' expected useful life. Plaintiffs proposed two classes in the District Court: (1) a class of property owners from their four home states (the Four-State Class), asserting various combinations of state-law causes of action against Owens Corning; and (2) a nationwide class of property owners (the Nationwide Class) seeking a ruling regarding the legal standard governing whether Owens Corning can use a bankruptcy discharge defense to shield itself from liability.

A

Plaintiffs proffer the Four-State Class as either a money damages class under Rule 23(b)(3) or an issue class under Rule 23(c)(4). Plaintiffs define the class as follows: "all individuals and entities that own a building or structure physically located in the states of California, Illinois, Pennsylvania, or Texas on which Owens Corning's Oakridge-brand shingles were installed from 1992 through 2012, and

5

where those shingles manifested any cracking, degranulation, fragmentation, or deterioration during the warranty coverage period." 317 F.R.D. at 453.

During the proposed 20-year class period, Owens Corning manufactured at least 23 kinds of Oakridge shingles at 13 different plants around the country using more than 500 design specifications. Plaintiffs did not dispute that all of these specifications met the applicable industry standard (ASTM D3462), which prescribes minimum measurements for newly manufactured shingles, such as "tear strength, net mass, mat mass, asphalt mass, and mineral matter mass." *Id.* at 465. Plaintiffs contended that in lieu of industry standards, defectiveness should be judged by the expected useful life of the shingles as represented by the applicable warranty period. According to Plaintiffs, compliance with ASTM D3462 did not consistently yield shingles that would last until the applicable warranty expired. In Plaintiffs' view, Owens Corning's design specifications sometimes yielded shingles vulnerable to "premature deterioration so that they . . . will actually only last 15 to 20 years." App. 247–48.

Plaintiffs claimed that Oakridge shingles had a propensity to fail before their warranties expired because of one or more of the following design flaws: insufficient asphalt quantity or quality, and insufficient mat mass and tear strength. Based on testing he conducted on 298 shingles, Plaintiffs' expert Dean Rutila opined that "about half" of the Oakridge shingles produced during the proposed 20-year class period fell on the "low end" of Owens Corning's specifications, which meant they were manufactured at or near the ASTM minimums. *Id.* at 514, 523, 528. Owens Corning challenged the admissibility of Rutila's opinions under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509

6

U.S. 579 (1993). The District Court ruled that all testimony based on Rutila's testing was inadmissible, but that he could testify to the general effect of various measurements on shingle performance based on his review of Owens Corning's internal documents, including design specifications and internal communications. For example, Rutila could testify that Oakridge design specifications produced shingles with a significant range of measurements, with only the "high-end" shingles capable of lasting for more than 20 years. *Gonzalez*, 317 F.R.D. at 499. Rutila acknowledged, however, that the "appropriateness of design specification measurements can only be judged in relationship to each other," *id.* at 485, and that "a shingle would have to be individually inspected to determine whether it is a nondefective or defective shingle," *id.* at 514. As a result, Plaintiffs could not point to "any particular measurement or set of measurements for the individual elements of a shingle that constitute a design defect." *Id.*

B

Plaintiffs propose that the Nationwide Class proceed under Rule 23(b)(1)(B) or Rule 23(b)(2), and that it include "all individuals and entities that own a building or structure physically located in the United States on which Owens Corning's Oakridge-brand shingles are currently installed, where those shingles were purchased on or before September 26, 2006." *Id.* at 453. Through the Nationwide Class, Plaintiffs seek to mitigate what they perceive is a risk of inconsistent judgments resulting from the procedural history of this case prior to the consolidation of Wright and West's action with those brought by the other named plaintiffs.

7

On September 26, 2006 (the cutoff date for the proposed class), the United States Bankruptcy Court for the District of Delaware confirmed a reorganization plan for Owens Corning after nearly six years of bankruptcy proceedings. Pursuant to the order confirming the plan and 11 U.S.C. § 1141, all claims that existed against Owens Corning as of that date were discharged. After Wright and West brought suit but before Plaintiffs' actions were consolidated, Owens Corning moved for summary judgment, arguing that the claims belonging to Wright and West existed prior to September 26, 2006, and were thus discharged when the reorganization plan was confirmed. The District Court granted summary judgment in favor of Owens Corning, citing this Court's decision in *JELD-WEN, Inc. v. Van Brunt* (*In re Grossman's Inc.*), 607 F.3d 114 (3d Cir. 2010) (en banc) ("*Grossman's*"). In that case, we held that for purposes of determining whether a claim is dischargeable in bankruptcy, the claim arises when the claimant is exposed to the debtor's product or conduct, regardless of when an injury is discovered. *Grossman's*, 607 F.3d at 125. For Wright and West, this meant that their claim arose when they purchased their shingles. Since that was before Owens Corning's reorganization plan was confirmed, the District Court concluded that Wright and West's claims were discharged.

On appeal to this Court, we declined to apply the *Grossman's* rule retroactively, citing due process concerns. *See Wright*, 679 F.3d at 108–09 (3d Cir. 2012). We concluded that bankruptcy cases in which reorganization plans were confirmed prior to the *Grossman's* decision are governed by the dischargeability standard articulated in the case that *Grossman's* overruled, namely *Avellino & Bienes v. M. Frenville Co.* (*In re M. Frenville Co.*), 744 F.2d 332 (3d Cir.

8

1984). *Wright*, 679 F.3d at 109. Since Owens Corning's reorganization plan was confirmed prior to our decision in *Grossman's*, we held that *Frenville* governed whether Wright and West's claims were discharged. *Id.* Under the *Frenville* standard, a court must look to the underlying state limitations law to determine when a claim arises. *Id.* at 104 & n.5. Thus, for example, a claim brought under the law of a state in which the discovery rule applies arises when the claimant discovers the injury. We affirmed in part and reversed in part the District Court's summary judgment, agreeing with the Court that Wright and West held "claims" under the Bankruptcy Code, *id.* at 106–07, but concluding that the Court erred in holding that those claims had been discharged, *id.* at 109.

On remand to the District Court, this case was consolidated with the cases brought in other districts by Gonzalez, Boehm, and the Maags. Because no class had been certified at the time of our decision in *Wright*, that decision did not bind unnamed putative class members. Hence Plaintiffs' desire to certify the Nationwide Class, through which they seek a judgment declaring that *Frenville* governs the dischargeability of class members' claims—effectively giving our decision in *Wright* binding classwide effect. Owens Corning concedes that, as we made clear in *Wright*, *Frenville* (not *Grossman's*) applies in determining whether the claims against it have been discharged in bankruptcy, and it has repeatedly—including during oral argument— foresworn any intention of raising a discharge defense against Plaintiffs or future claimants. Plaintiffs nevertheless argue that classwide adjudication of the question we faced in *Wright* is necessary "[t]o avoid inconsistency and needless litigation for other consumers." Plaintiffs Br. 22.

C

Plaintiffs moved for certification of the Four-State and Nationwide Classes. On March 31, 2016, the District Court denied Plaintiffs' motion. With respect to the Four-State Class, the District Court concluded that Plaintiffs had not met their burden under Rule 23(b)(3) to show that "questions of law or fact common to class members predominate over any questions affecting only individual members," *Gonzalez*, 317 F.R.D. at 510, nor was it persuaded that certifying a class under Rule 23(c)(4) to decide issues of liability was appropriate.[1] The District Court concluded that the Nationwide Class could not satisfy the commonality requirement of Rule 23(a) because the only common question it presented was not justiciable. Plaintiffs filed a timely petition for Rule 23(f) review, which we granted.

II

The District Court had jurisdiction under 28 U.S.C. § 1332(d). We have appellate jurisdiction over this interlocutory appeal under 28 U.S.C. § 1292(e) and Rule 23(f).

"We review a class certification order for abuse of discretion, which occurs if the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Hayes v. Wal-Mart Stores*, *Inc.,* 725 F.3d 349, 354 (3d Cir. 2013)

---

[1] Plaintiffs also moved for certification of the Four-State Class under Rule 23(b)(2), which the District Court denied. Plaintiffs have not appealed that ruling.

10

(internal quotation marks omitted). We review de novo whether an incorrect legal standard has been used. *Id.*

III

In this appeal, Plaintiffs argue that the District Court denied certification of the Nationwide Class based on an erroneous understanding of the requirements for justiciability under Article III of the Constitution, and that its denial of certification of the Four-State Class was, among other errors, improperly grounded in its assessment of the merits, as forbidden by the Supreme Court in *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013).

Every putative class action must satisfy the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure: numerosity, commonality, typicality, and adequacy. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). In addition to the Rule 23(a) requirements, a class action must satisfy Rule 23(b)(1), (2), or (3). The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2009). Echoing the Supreme Court, we have repeatedly "emphasize[d] that '[a]ctual, not presumed conformance' with Rule 23 requirements is essential." *Id.* at 326 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 167 (3d Cir. 2001)). A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). To proceed under Rule 23(b)(3), Plaintiffs' proposed Four-State Class must meet the additional requirements that "[common] questions of law or fact . . .

11

predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

We agree with the District Court that the Nationwide Class cannot satisfy Rule 23(a)'s commonality requirement because the only common question it poses can be answered only by way of an advisory opinion, which is forbidden by Article III. As we shall explain, because we agree with the District Court that the Four-State Class cannot satisfy Rule 23(b)(3)'s predominance requirement, we need not discuss the other requirements of Rule 23 as they relate to the Four-State Class. Finally, the District Court's conclusion that a Rule 23(c)(4) issue class is not an appropriate vehicle for the Four-State Class was not an abuse of discretion.

A

Plaintiffs first argue that the District Court erred when it failed to certify the Nationwide Class under Rule 23. Rule 23(a) requires that the named plaintiffs share with the rest of the putative class at least one "question[] of law or fact." Fed. R. Civ. P. 23(a)(2); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." (second and third alterations in original) (internal quotation marks omitted)). And that common question must be justiciable under Article III of the Constitution. *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 366 (3d Cir. 2015). In this appeal, Plaintiffs must establish the justiciability of the following question: what legal standard governs the dischargeability of claims against Owens Corning? Failing that, the Nationwide Class cannot satisfy the commonality requirement and

certification is inappropriate under either Rule 23(b)(1)(B) or (b)(2). *Amchem*, 521 U.S. at 613. We therefore examine the requirements of Article III to determine whether the District Court abused its discretion.

"Article III . . . restricts the power of federal courts to 'Cases' and 'Controversies.'" *Chafin v. Chafin*, 568 U.S. 165, 171 (2013). Accordingly, federal courts may not give "opinion[s] advising what the law would be upon a hypothetical state of facts." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (internal quotation marks and citation omitted). In determining whether an actual controversy exists, we have considered "the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990). *Step-Saver* was a suit for declaratory relief in which the plaintiff corporation sought a declaration that its suppliers were responsible for any liability it may have had to its customers as a result of the customers' pending suits against it. *Id.* at 646. While Plaintiffs do not invoke the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, they acknowledge that their position is analogous to that of one seeking a declaratory judgment. The *Step-Saver* factors are therefore appropriate guides to our analysis. *See, e.g.*, *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 853 (3d Cir. 1996) (applying *Step-Saver* factors to justiciability analysis where relief sought was "somewhat analogous to . . . a declaration of rights").

Despite Owens Corning's assurances that it will not raise a discharge defense, Plaintiffs maintain that the interests of the parties are sufficiently adverse to give rise to a justiciable case or controversy. They argue, contrary to the District Court's analysis, that Owens Corning would not be

precluded from raising a discharge defense. Because of the discretionary nature of collateral estoppel when asserted by a plaintiff who was not party to the original judgment—what we call "non-mutual offensive collateral estoppel"—a court could theoretically decline to find that *Wright* precludes a discharge defense under these circumstances. So long as such a possibility exists, Plaintiffs argue, the parties' dispute remains a live one and their interests are adverse.

Plaintiffs' analysis does not change the fact that the relief they seek would come from an advisory opinion. Put in terms of the *Step-Saver* factors, the judgment Plaintiffs seek on behalf of the Nationwide Class would lack both conclusiveness and practical utility. *See Step-Saver*, 912 F.2d at 647. As Plaintiffs acknowledge, because the *Frenville* test requires a fact-intensive analysis of each claim under the applicable state limitations law, a court's declaration that "*Frenville* applies" would not determine whether the claims held by individual members of the Nationwide Class were discharged. That would depend on the outcome of the *Frenville* analysis as applied to each claim. But Plaintiffs do not seek this relief. Instead, they ask that we now declare—as we did in *Wright*—that *Frenville* applies, but this time in the class context. Plaintiffs do so as a preemptive strike in the event Owens Corning might raise a discharge defense in future litigation.

This is the opposite of a conclusive judgment. It is more akin to the bankruptcy court order we reviewed in *Coffin*, which stated that a debtor's bankruptcy confirmation had not discharged a bank's mortgage lien. 90 F.3d at 852–53. We concluded that the order constituted an advisory opinion, since it decided "no actual controversy between the parties." *Id.* at 853. The determination of whether the bank's

14

lien had been discharged was "not before the court for adjudication," because the debtor had not moved for an order of lien avoidance, and the bank had not yet attempted to enforce its lien. *Id.* That determination would have to be "made by another court in foreclosure proceedings[,] and the bankruptcy court's advice will have no legal effect." *Id.* at 854. Here, if Owens Corning were to raise a discharge defense against a future claimant, the court hearing that case would be required to decide what law governs. That contingency is not before us. [2]

Nor are we persuaded that the judgment Plaintiffs seek on behalf of the Nationwide Class would be of any utility to them beyond what we held in *Wright*. Contrary to Plaintiffs'

[2] Plaintiffs' and amici's citation to *In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006), is inapposite. There, plaintiffs challenged a county jail's strip search policy under 42 U.S.C. § 1983. The defendants conceded the policy's unconstitutionality, which the district court found "removed all common liability issues," since the only remaining issues concerned whether individual class members' rights were violated. *In re Nassau County*, 461 F.3d at 224. The Second Circuit reversed, holding that rather than defeating predominance under Rule 23(b)(3), the concession acted as a form of classwide proof. *Id.* at 228–29. But justiciability under Article III, not predominance under Rule 23(b)(3), is at issue here. Because the *Nassau County* plaintiffs still had § 1983 claims pending before the district court, an "actual controversy between the parties" remained. *Coffin*, 90 F.3d at 853. By contrast, Plaintiffs requested that the District Court here preempt a potential defense in a future case.

15

suggestion, such a judgment would not adjudicate the rights of the parties, since it would not decide whether, under *Frenville*, a particular class member's claims had been discharged. It would merely repeat, on a larger scale, what this Court has already held. We understand Plaintiffs' concern that *Wright*'s preclusive effect might be left to the discretion of a distant tribunal in a hypothetical future case, but Plaintiffs do not cite, and we cannot find, any support for the proposition that this fact alone suffices to create a justiciable question.[3]

For these reasons, we conclude that the sole common question the Nationwide Class asked the District Court to

---

[3] Plaintiffs correctly note that, as we explained in *Gayle v. Warden Monmouth County Correctional Institution*, "courts should exercise great caution before denying class certification" on the basis that it is unnecessary. 838 F.3d 297, 310 (3d Cir. 2016). But contrary to their suggestion, our conclusion that certification is inappropriate here is consistent with *Gayle*. In that case, we reversed a denial of class certification predicated on the conclusion that it would serve "[n]o useful purpose" after the district court's merits rulings. *Id.* at 303. We held that "necessity is not a freestanding requirement justifying the denial of class certification," and that district courts can consider it only to the extent it bears on the ability of a putative class to satisfy the requirements of Rule 23. *Id.* at 310. Here, the District Court did not treat the usefulness of the relief sought by Plaintiffs as a freestanding requirement, but rather as a component of its justiciability analysis. As we have explained, that analysis was necessary to determine if Plaintiffs could satisfy the commonality requirement of Rule 23.

answer was not justiciable under Article III. The District Court rightly concluded that Plaintiffs could not satisfy the commonality requirement of Rule 23(a) and therefore did not err when it denied Plaintiffs' motion to certify the Nationwide Class.[4]

B

We turn next to the District Court's decision regarding the Four-State Class. The predominance requirement of Federal Rule of Civil Procedure 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Hydrogen Peroxide*, 552 F.3d at 310–11 (quoting *Amchem*, 521 U.S. at 623). Predominance requires "[i]ssues common to the class [to] predominate over individual issues[,]" *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 313–14 (3d Cir. 1998), a "far more demanding" standard than the commonality requirement of Rule 23(a), *Amchem*, 521 U.S. at 623–24. To assess whether predominance is met at the class certification stage, a district court must determine whether the essential elements of the claims brought by a putative class are "capable of proof at trial through evidence that is common

---

[4] Plaintiffs complain that despite their request at oral argument for certification under Rule 23(b)(2) as an alternative to certification under Rule 23(b)(1)(B), the District Court's opinion does not address the appropriateness of Rule 23(b)(2) as a vehicle for the Nationwide Class. The need for such an analysis, however, was obviated by the District Court's conclusion that the Nationwide Class failed to satisfy the commonality requirement of Rule 23(a), which applies to class actions under both Rule 23(b)(1)(B) and (b)(2).

to the class rather than individual to its members." *In re Hydrogen Peroxide*, 552 F.3d at 311–12. This determination requires a "rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove" these elements. *Id.* at 312. "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Newton*, 259 F.3d at 172. Accordingly, we examine the essential elements of Plaintiffs' claims on behalf of the Four-State Class, as well as the evidence they propose to use, "through the prism" of the predominance requirement to determine whether the District Court properly denied class certification. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 600 (3d Cir. 2012) (citation omitted).

Plaintiffs proffer numerous claims, but each can be categorized as one of the following: breach of express warranty, breach of implied warranty of merchantability, violation of state consumer protection statutes, and unjust enrichment. In the District Court, Plaintiffs pointed to two questions central to all claims that, on their view, predominated over individual issues: whether Oakridge shingles suffer from a common defect, and if so, whether Owens Corning misrepresented the shingles' expected useful life. As the District Court observed, the defect question is primary, because success on each claim requires a finding that Oakridge shingles are defectively designed. This is because "[t]he only misrepresentations or omissions that Owens Corning is accused of making are that Oakridge-brand shingles will last for at least 25 years, or for the same number of years as the limited shingle warranty." *Gonzalez*, 317 F.R.D. at 512. Owens Corning argued that "[i]f a class member's Oakridge shingle was not defective, no warranty

was breached. . . . Similarly, if [the] . . . shingles were not defective, then Owens Corning's conduct was not . . . actionable under the state consumer fraud acts; nor has Owens Corning unjustly retained any benefit." App. 2824. Defective design is therefore an essential element of Plaintiffs' misrepresentation-based claims, and whether it is susceptible to classwide evidence is dispositive of whether Plaintiffs can satisfy predominance.

While the parties agreed that the defect question underpins this case, they disagreed about the implications of this fact for the predominance analysis. Plaintiffs argued that the defect question was common and predominant for purposes of Rule 23(b)(3). Owens Corning countered that while the question may be essential to this litigation, it could not be "proven using classwide evidence," and thus neither could Plaintiffs' misrepresentation claims. App. 2824. During the proposed class period, Owens Corning noted, 23 types of Oakridge shingles were designed according to 500 different specifications. As Plaintiffs acknowledged, the useful life of a shingle could be estimated only upon inspection of that shingle. Finally, Owens Corning argued that Plaintiffs' admission that a significant proportion of Oakridge shingles may in fact last the length of their warranties, *i.e.*, lack any defect, distinguishes this case from the defective-products cases Plaintiffs cited in which courts certified a class after finding a predominant common question.

In response, Plaintiffs argued that their theory of defective design did not require them to show that all Oakridge shingles were prone to fail during their warranty periods. According to Plaintiffs, all Oakridge shingles could be considered defectively designed, regardless of their actual measurements or performance, because Owens Corning's

19

design specifications provided for a range of measurements that resulted in some shingles having a higher-than-advertised likelihood of failing before the warranties expired. It therefore did not matter that Plaintiffs' expert could not identify the particular measurements that supposedly rendered the Oakridge specifications defective. Regardless of the quality of the shingles on their own roofs, all Oakridge customers had unknowingly entered a "shingle lottery," *Gonzalez*, 317 F.R.D. at 478–79. Because this theory of defect applies to the entire class, Plaintiffs argued, a predominant common question existed and Rule 23(b)(3) was satisfied.

The District Court rejected this argument and agreed with Owens Corning that it would be "impossible for plaintiffs to meet their burden to prove a design defect by evidence common to the class." *Id.* at 512. Because the presence of a design defect was an essential element of Plaintiffs' misrepresentation-based claims, the District Court concluded that they could not be proved by common evidence. Given that, as Plaintiffs acknowledged, the design defect and misrepresentation issues form the core of their theory of liability, the Court concluded that the inability to prove these issues through classwide evidence was fatal to predominance and thus to certification of the Four-State Class.

Plaintiffs' theory of design defect—which absolves them of the need to identify any particular problems with their shingles—is the focus of Plaintiffs' appeal. According to Plaintiffs, the District Court's rejection of this theory was an abuse of discretion because the District Court: (1) misread product-defect cases in this circuit and others; (2) improperly excluded expert testimony; and (3) contravened *Amgen* by assessing the merits of Plaintiffs' claims at the class

certification stage. In the alternative, Plaintiffs argue that the District Court should have certified a "liability-only class" under Rule 23(c)(4) because that "resolution of the common liability issues would materially advance the litigation." Plaintiffs Br. 21. We will address these arguments in turn.

1

Plaintiffs argue that, because customers were "playing roulette in assuming that Oakridge shingles will last for the full warranty period," Plaintiffs Br. 15, they "did not get the benefit of the[ir] bargain," regardless of their shingles' actual performance. Plaintiffs Br. 40. Consequently, they liken their case to a number of product-defect cases in which courts have certified a class despite an alleged defect not manifesting itself in each product. For example, they cite Sixth and Seventh Circuit cases involving Whirlpool washing machines that tended to accumulate mold because of an alleged design defect. In each case, class certification was upheld despite the absence of mold accumulation in the majority of class members' washing machines. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013); *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359 (7th Cir. 2012), *cert. granted, judgment vacated*, 569 U.S. 1015 (2013), *judgment reinstated on remand*, 727 F.3d 796 (7th Cir. 2013).

The cases involving Whirlpool washing machines are not on point because there is a critical distinction between a latent defect and a non-existent one. The defect in the washing machine cases was allegedly present in all washing machines manufactured under a particular line, even if the defect had not yet manifested itself. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at

847. Plaintiffs in those cases had adduced evidence at the class certification stage indicating that the allegedly defective washing machines had all been built according to nearly identical designs. *See id.* (explaining that the various types of front-loading washing machines at issue shared "nearly identical engineering"); *see also Butler*, 702 F.3d at 361 (noting "all Kenmore-brand frontloading 'high efficiency' washing machines" were alleged to suffer from the same defect). This meant that the lack of a mold problem in some machines was the result of latency, not the absence of a defect.

By contrast, Plaintiffs here do not identify a particular defect that can be attributed to all Oakridge shingles. They instead admit that a great many Oakridge shingles will last through the end of their warranty periods, and that a shingle-by-shingle inspection is necessary to distinguish ones that are likely to fail before the end of their warranty periods from ones that are likely to perform as expected (*i.e.*, that are not defective). This case is thus unlike those in which the latency of an alleged defect did not pose an obstacle to certification.

For the same reasons, Plaintiffs' citations to *Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010); *Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) (per curiam); and *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006) are not persuasive. In each case, the plaintiffs were able to identify a particular defect that, whether it had manifested itself, allegedly existed in each of the relevant products. *See Rikos*, 799 F.3d at 519 (noting the allegation that nutritional supplement is "snake oil" and yields no benefit to any class members); *Wolin*, 617 F.3d at 1172 (noting that a geometric defect in vehicle alignment was

alleged to be present in each class member's car); *Pella*, 606 F.3d at 392 (noting that all ProLine casement windows were allegedly designed to allow water to seep behind aluminum casing, accelerating wood rot); *Daffin*, 458 F.3d at 551 (observing that allegedly defectively designed throttle body in named plaintiff's vehicle was identical to that found in all vehicles covered by the class definition). Not only do Plaintiffs fail to identify an alleged defect common to all Oakridge shingles, they fail to specify where within a range of measurements a particular design "crosses the line from producing nondefective products to producing defective products or to quantify how often defective products, versus nondefective products, were produced." *Gonzalez*, 317 F.R.D. at 513.

As we noted, Plaintiffs attempt to circumvent the need to identify a common defect by, in effect, redefining the concept to include a subset of defective shingles. Unsurprisingly, they cite no case sanctioning such a remarkable proposition. Plaintiffs' citation to *In re IKO Shingle Products Liability Litigation*, 757 F.3d 599 (7th Cir. 2014), a roofing shingle case in which not all shingles were manifestly defective, is unavailing. In that case, the Multi-District Litigation Court's order denying class certification was vacated because it had incorrectly imposed a commonality-of-damages requirement at the class certification stage. *IKO*, 757 F.3d at 603. The plaintiffs in that case—unlike Plaintiffs here—had no difficulty articulating a defect common to all of their shingles, namely, their failure to meet the manufacturer's promise that they satisfied the applicable ASTM standard. *Id.* at 599.

Equally unavailing is Plaintiffs' analogy to *McManus v. Fleetwood Enterprises, Inc.*, 320 F.3d 545 (5th Cir. 2003),

in which certification of a class was upheld on the ground that class members "did not receive the benefit of their bargain." *Id.* at 552 (internal quotation marks and citation omitted). The plaintiffs in that case were nevertheless required to explain why the motor homes they had purchased were defective, and their explanation applied to all class members: none of the motor homes could "safely tow a normal car without supplemental breaks." *Id.* at 551–52. As in all of the other cases Plaintiffs cite, members of the putative class in *McManus* were required to articulate a defect allegedly present in *all* relevant products. Regardless of the theory of liability pursued, Rule 23 requires, if nothing else, that a putative class must describe the product's defect on a classwide basis. If proponents of the class do not allege a defect common to the class, the defectiveness of a given product is, by necessity, not susceptible to proof by classwide evidence.

Finally, Plaintiffs' reliance on *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), is misplaced as well. In that case, a class of employees claimed Tyson Foods violated the Fair Labor Standards Act when it failed to compensate them for time spent "donning and doffing" protective gear. 136 S. Ct. at 1042. Because Tyson had failed to keep records for the relevant period, the class proposed to use a study measuring uncompensated overtime using a representative sample of employees. *Id.* at 1043. The Supreme Court held that the class could extrapolate from the results of the study to establish classwide liability, even though the parties agreed that some class members were properly compensated, because the study was "the only practicable means to collect and present relevant data." *Id.* at 1046. Tyson objected that uninjured class members might share in or increase the

24

amount of the awarded damages, but the Court concluded that this was an issue the parties could address upon apportionment of the damages. *Id.* at 1049–50. Despite the necessary inquiries into individual work times, the Court held that the question of whether the time employees spent "donning and doffing" the gear was compensable work under the FLSA satisfied the predominance requirement. *Id.* at 1045–46. This appeal is unlike *Tyson*. The FLSA question in *Tyson* was a common one because its resolution would determine the scope of all class members' rights and leave only questions of individual damages. Here, by contrast, resolving the defect issue can be done only by examining each individual shingle or by accepting a speculative theory of defect.

In this case, instead of alleging a defect common to the class that might be proved by classwide evidence, Plaintiffs invite us to equate the existence of a defect with the mere possibility that one might exist. We find no support in Rule 23 or caselaw for class certification on such a speculative basis. Far from abusing its discretion, the District Court properly concluded that Plaintiffs' novel reformulation of the concept of a product defect could not be permitted to work an end run around the requirements of Rule 23(b)(3).

2

Plaintiffs argue that the District Court also abused its discretion by ruling inadmissible the testimony proffered by Rutila based on his testing of Oakridge shingles. The Court ruled that Rutila could not testify because, among other reasons, the results were tainted by selection bias and statistically insignificant in light of the millions of Oakridge shingles installed during the class period. As Rutila admitted,

25

the 298 shingles he tested had been returned in connection with a warranty claim, so they were the antithesis of a random sample of Oakridge shingles.

Plaintiffs make several arguments as to why the Court's ruling on Rutila's testimony was erroneous, but we need not address them, because our Rule 23 analysis is unaffected by the outcome. Even if all of the testimony offered by Rutila were admissible, Plaintiffs would not have been able to cure their inability to identify a meaningful defect in Oakridge shingles susceptible to classwide evidence. As the District Court noted, Rutila's testing did not enable him to identify when a shingle "crosses the line and becomes defective." *Gonzalez*, 317 F.R.D. at 479. Nor would it have negated Rutila's own admissions that (1) one can identify a shingle as defective, however that term is defined, only after examining it individually, and (2) even shingles designed at the low end of Owens Corning's specifications will not necessarily fail before the end of their warranty periods. The fundamental problem thus remains: Plaintiffs cannot identify what is defective about their shingles, let alone how the unidentified defect is susceptible to proof common to all class members.[5] It is therefore unnecessary for us to undertake a

---

[5] Although the class definition's limitation to shingles that "manifested any cracking, degranulation, fragmentation, or deterioration during the warranty coverage period," *Gonzalez*, 317 F.R.D. at 453, might seem to solve this problem, it is irrelevant to the predominance inquiry. The definition limits who may be a member of the class, but it does not purport to define the elements of the claims brought on its behalf. Only the latter are relevant to the predominance inquiry.

*Daubert* analysis to determine whether the District Court abused its discretion in holding Rutila's testimony inadmissible.[6]

---

[6] After it excluded Rutila's testing, the District Court ruled that Rutila would be permitted to testify that mat mass of approximately 1.5 pounds per 100 square feet would ensure a non-defective shingle. The Court would not permit him to testify, however, as to what measurements of asphalt mass and net weight would ensure a non-defective shingle. Even if all of these opinions were admissible, however, they would not help Plaintiffs articulate a meaningful theory of defect susceptible to classwide evidence, for two reasons. First, an opinion that one measurement will guarantee adequate performance does not mean that anything less is defective. Second, as discussed at the *Daubert* hearing, "it is the relationship between mat mass, asphalt mass and net weight that must be coordinated in order to produce a shingle that will be reliable." App. 390. Thus, a shingle with an inadequate mat mass might not fail before the end of the applicable warranty period if its other measurements are sufficient. The fact that this relationship can only be assessed upon inspection of a particular shingle only compounds the evidentiary problem for Plaintiffs. At any rate, Plaintiffs only challenge the District Court's exclusion of testimony based on Rutila's testing of returned shingles.

Plaintiffs argue that, to the extent the District Court had reservations about their theory of defect, the Supreme Court's decision in *Amgen* required it to set them aside for purposes of the class certification decision: "[t]he district court may not have liked this theory, but class certification was not the place to adjudicate it." Plaintiffs Br. 41.

In *Amgen*, the Supreme Court cautioned district courts not to "put[] the cart before the horse" by allowing their views of the merits to affect their analysis of the independent question whether a putative class satisfies the requirements of Rule 23. 568 U.S. at 460. "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently." *Id.* (alteration and internal quotation marks omitted). While in some cases it may be inevitable that the class-certification analysis "entail some overlap with the merits of the plaintiff's underlying claim," *id.* at 465–66 (quoting *Dukes*, 564 U.S. at 351), as a general matter, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466.

Plaintiffs call the District Court's opinion the "antithesis of *Amgen*." Plaintiffs Br. 36. According to Plaintiffs, the merits of their theory of defect were irrelevant to class certification, and thus off limits under *Amgen*. But the District Court's analysis, they correctly note, is laced with merits determinations. For example, the Court characterized Plaintiffs' theory of defect as "seemingly novel and illogical," *Gonzalez*, 317 F.R.D. at 513, and concluded that Plaintiffs had "submit[ted] no legal authority to support their proposition that a design specification that sets a range of

measurements, some of which will produce defective products and some of which will not, can establish a design defect claim," *id.* at 495. Plaintiffs argue that these merits determinations "infected the entire certification process," requiring a remand. Plaintiffs Br. 2.

Because "all of the claims in the lawsuit will rise or fall on the question of defect," and at least some of the evidence they propose to use—including portions of Rutila's testimony and internal Owens Corning communications—is applicable to all class members, Plaintiffs claim they have satisfied their burden under *Amgen* by identifying a "common question[] that will yield [a] common answer[]." Reply Br. 10. (emphasis omitted). To be sure, if defect is defined in the manner Plaintiffs propose, it does not require a leap to conclude that the alleged defect is susceptible to classwide evidence, since class members would not be required to show anything about their individual shingles. But Plaintiffs offer no support for the idea that it is a violation of *Amgen* to recognize at the certification stage that the "question of defect" they propose is only superficially a "common question," just as any question becomes universal when it includes the word "all." Nothing about *Amgen* or Rule 23 limits district courts in this way. As the *Amgen* Court recognized, merits determinations are permitted "to the extent . . . relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." 568 U.S. at 466. As with the other requirements of Rule 23, the predominance requirement of Rule 23(b)(3) is "not [a] mere pleading rule[.]" *In re Hydrogen Peroxide*, 552 F.3d at 316. To determine whether the requirement is met, a court may "delve beyond the pleadings" and answer questions that are often "enmeshed in the factual and legal issues comprising

29

the plaintiff's cause of action." *Newton*, 259 F.3d at 167 (internal quotation marks and citations omitted). Courts "must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *In re Hydrogen Peroxide*, 552 F.3d at 307.

In this context, the District Court was not bound—by *Amgen* or otherwise—to deem sufficient for certification the "question of defect" as Plaintiffs presented it. It is incongruous to argue simultaneously, as Plaintiffs do, that their theory of defect is central to their claims and that its coherence and legal foundation are irrelevant to the certification decision. By rejecting Plaintiffs' theory, the District Court did not find as a matter of fact that Oakridge shingles are not defective. It merely applied Rule 23's predominance requirement, under which Plaintiffs were required at the certification stage to identify a defect that affected all class members' shingles, regardless of whether the defect will ultimately be proved by a preponderance of the evidence at the merits stage. It does not follow from *Amgen* that a common question suffices for purposes of Rule 23 by virtue of Plaintiffs' *ipse dixit*. Instead, it remains the task of district courts, through application of the rule's requirements to the facts and claims before it, to determine what constitutes a "question[] of law or fact common to class members." Fed. R. Civ. P. 23(b)(3). The District Court's determination in this regard, while fatal to certification, was nonetheless squarely within the discretion afforded it by *Amgen* and Rule 23. What Plaintiffs attack as the District Court's "obsession with the merits," Plaintiffs Br. 36, we conclude was instead nothing more than the "rigorous analysis" required to determine

whether the proposed class actually met the requirements of Rule 23. *Falcon*, 457 U.S. at 161.[7]

Our conclusion that the District Court did not abuse its discretion in rejecting Plaintiffs' theory of defect for purposes of Rule 23 ends our analysis of whether the Four-State Class

---

[7] Plaintiffs quote several other passages in the District Court's opinion in which the Court discusses, or appears to discuss, the merits of Plaintiffs' defect claim, allegedly in violation of *Amgen*. These passages do not show what Plaintiffs suggest when read in context. For example, Plaintiffs call "especially revealing" the District Court's observation that because it had ruled Rutila's testing inadmissible, "[P]laintiffs were tasked with proving their design defect claim by way of [other] evidence," *Gonzalez*, 317 F.R.D. at 478. Plaintiffs Br. 35. The Court was not suggesting that Plaintiffs were required to prove the merits of their defect claim at the class certification stage, though that might be inferred by Plaintiffs' incomplete quotation, which stops after the word "claim." Rather, the Court was simply, and correctly, noting that it was Plaintiffs' burden under Rule 23 to show that the defect claim was susceptible to proof by classwide evidence despite the inadmissibility of this portion of Rutila's testimony. The other passages Plaintiffs cite turn out to be similarly innocuous. To the extent Plaintiffs argue that the District Court's Rule 23 analysis violated *Amgen* in its treatment of their misrepresentation-based claims, we need not address this issue, because, as explained, the inadequacy of Plaintiffs' theory of defect for purposes of Rule 23(b)(3) is alone fatal to class certification.

31

should have been certified under Rule 23(b)(3).[8] As we have explained, because Plaintiffs cannot show that liability for defective design is susceptible to classwide evidence, they are equally unable to show the same in support of their misrepresentation claims. They are thus unable to show that "[common] questions of law or fact . . . predominate over any questions affecting only individual members," as Rule 23(b)(3) requires. Our conclusion that predominance is lacking makes it unnecessary for us to discuss whether Plaintiffs have satisfied the other requirements of Rule 23. The District Court did not abuse its discretion in denying certification of the Four-State Class under Rule 23(b)(3).

---

[8] Despite its conclusion that Plaintiffs' "inability to prove the existence of a design defect by evidence that is predominantly common to the class is fatal to [their] misrepresentation-based legal claims," the District Court undertook an analysis of the latter "for the sake of completeness." *Gonzalez*, 317 F.R.D. at 515. For reasons already explained, we agree with this conclusion.

Plaintiffs argue in the alternative that the District Court abused its discretion in denying certification of the Four-State Class as a liability-only issue class under Rule 23(c)(4), which provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." In *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011), we enumerated several non-exhaustive factors relevant to assessing whether certification of an issue class under Rule 23(c)(4) is appropriate. Those factors include "the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives" and "the substantive law underlying the claim(s)." *Id.* at 273.

Plaintiffs sought to pursue their claims as an issue class under Rule 23(c)(4) because the issues involved rest on a "common core of facts," so efficiencies would be gained by resolving them in a single proceeding. *Gonzalez*, 317 F.R.D. at 528. The District Court disagreed, in part for the same reasons it concluded that Plaintiffs could not satisfy the predominance requirement of Rule 23(b)(3): because the issues are not susceptible to "proof by common evidence[,] . . . [n]o efficiencies are gained by litigating [them] on a classwide basis." *Id.*

"[A] court's decision to exercise its discretion under Rule 23(c)(4), like any other certification determination under Rule 23, must be supported by rigorous analysis." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 200–01 (3d Cir. 2009). While Plaintiffs are correct to point out that the appropriateness of certifying a Rule 23(c)(4) class is analytically independent from the predominance inquiry under Rule 23(b)(3), a case may present concerns relevant to

both. *See Gates*, 655 F.3d at 272–74. This is such a case. Unlike a situation in which a Rule 23(c)(4) class might be appropriate because liability is capable of classwide treatment but damages are not, Plaintiffs offer no theories of liability for which classwide treatment is apt. The District Court therefore correctly determined that a Rule 23(c)(4) class would not "materially advance resolution of the underlying claims," *id.* at 269, any more than would a class under Rule 23(b)(3). Accordingly, we cannot conclude that the District Court's denial of certification of the Four-State Class under Rule 23(c)(4) was an abuse of discretion.

IV

For the reasons stated, the District Court did not abuse its discretion in denying Plaintiffs' motion for class certification. We will affirm.