In the

# United States Court of Appeals
## For the Seventh Circuit

————————

Nos. 13-8023 & 13-8024

JEANA PARKO, *et al.*,

*Plaintiffs*,

*v.*

SHELL OIL CO., *et al.*,

*Defendants*.

PETITIONS OF CONOCOPHILLIPS CO., *et al*.

————————————

Petitions for Permission to Appeal
from the United States District Court
for the Southern District of Illinois.
No. 3:12-cv-00336 — **G. Patrick Murphy**, *Judge*.

————————————

SUBMITTED OCTOBER 23, 2013 — DECIDED JANUARY 17, 2014

————————————

Before WOOD, *Chief Judge*, AND POSNER and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. The district court certified a class of property owners in Roxana (a tiny village in southwestern Illinois, across the Mississippi River from St. Louis) in a suit

against Shell Oil Company, which (together with Shell subsidiaries also joined as defendants) until 2000 owned and operated an oil refinery (the Wood River Refinery, built in 1918) that is adjacent to the village. The suit is also against ConocoPhillips (and some of its subsidiaries), which bought the refinery from Shell that year and is its current owner and operator. The plaintiffs claim that the refinery has leaked benzene and other contaminants into the groundwater under the class members' homes. The suit, a diversity suit, charges nuisance and related torts in violation of Illinois common law, and seeks by way of remedy damages measured primarily by the effect of the groundwater contamination on the value of the class members' properties.

The defendants have petitioned us for leave to appeal the certification of the class. Fed. R. Civ. P. 23(f). We have decided to grant their request in order to clarify class action law, see *Blair v. Equifax Check Service, Inc.*, 181 F.3d 832, 835 (7th Cir. 1999), with respect to district courts' responsibility to perform a "rigorous analysis" before determining that issues common to the class predominate over issues that differ among the individual class members. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). Because the petitions and response address the certification issue comprehensively, we proceed to resolve the issue without requiring further briefing.

The defendants also challenge—and we'll discuss this challenge briefly before getting to the issue of predominance—the district judge's ruling that the class is large enough to satisfy the "numerosity" requirement of Rule 23(a)(1) (that is, that it's too large for joinder of plaintiffs to

be a feasible alternative to a class action). There appear to be about 150 class members. The defendants do not argue that such a class is small enough for joinder to be a feasible, let alone a superior, alternative to a class action. But they say that a number of the class members were not injured—either their groundwater was not contaminated by leakage from the refinery or the contamination did not affect the value of their property—and so lack standing to obtain relief and therefore don't belong in the class. And if those class members are subtracted, the defendants contend, there are no longer enough members to make a class action a superior procedural vehicle to joinder of individual plaintiffs.

We reject the argument. To require the district judge to determine whether each of the 150 members of the class has sustained an injury—on the theory that if 140 have not, and so lack standing, and so should be dropped from the class, certification should be denied and the 10 remaining plaintiffs be forced to sue (whether jointly or individually)—would make the class certification process unworkable; the process would require, in this case, 150 trials before the class could be certified. The defendants are thus asking us to put the cart before the horse. How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified.

The district judge identified a question common to the class—namely whether the defendants' "failure to contain petroleum byproduct at the refinery result[ed] in contamination to Roxana property." The defendants argue that this ruling does not establish the predominance of issues common to the entire class over issues that vary among the members of the class. And predominance is of course one of the re-

quirements for class certification if damages are sought. Fed. R. Civ. P. 23(b)(3).

Predominance is a qualitative rather than a quantitative concept. It is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance. In *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013), the Supreme Court said that the requirement of predominance is not satisfied if "individual questions … overwhelm questions common to the class." And in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997), the Court said that the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." See also *In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. 330, 345 (N.D. Ohio 2001) ("common issues need only predominate, not outnumber individual issues").

Predominance of issues common to all class members, like the other requirements for certification of a suit as a class action, goes to the efficiency of a class action as an alternative to individual suits. If resolving a common issue will not greatly simplify the litigation to judgment or settlement of claims of hundred or thousands of claimants, the complications, the unwieldiness, the delay, and the danger that class treatment would expose the defendant or defendants to settlement-forcing risk are not costs worth incurring.

Mere *assertion* by class counsel that common issues predominate is not enough. That would be too facile. Certification would be virtually automatic. And so Rule 23 "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Rather, when factual dis-

putes bear on issues vital to certification (that is, to whether the suit should be allowed to be litigated as a class action), such as predominance, the court must "receive evidence … and resolve the disputes before deciding whether to certify the case." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001); see also *Comcast Corp. v. Behrend, supra*, 133 S. Ct. at 1432; *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800–01 (7th Cir. 2013).

The defendants contend that the contamination alleged by the plaintiffs occurred over a 90-year period and involved acts and omissions charged against the six defendants, and maybe other polluters as well (because the area in which the refinery is located is industrial, and the defendants have identified oil leaks by gas stations and other companies), and that in consequence class members could well have experienced different levels of contamination, implying different damages, caused by different polluters. See *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 261 (3d Cir. 2011). Nor could it be assumed that every class member has experienced the same diminution in the value of his property even if every one has experienced the same level of contamination. For the greater the variance in property values (about which the district judge made no findings), the less likely it is that contamination would affect the value of all or most properties by the same amount of money or the same percentage of market value. Also this doesn't appear to be one of those small-claims suits that as a practical matter can proceed only as a class action (e.g. overcharges of $5.50 for rental cars). The damages may not be huge, but may well be sizable enough for individual (or joined) suits to be a feasible alternative to a class action.

It's not even clear that the plaintiffs have *identified* a common issue. Their expert, a hydrogeologist, intends to measure contamination by the benzene levels in the groundwater beneath the class members' property, even though their water supply doesn't come from groundwater (which they don't even own, though they have the right to use it, *Bridgman v. Sanitary District of Decatur*, 517 N.E.2d 309, 312–13 (Ill. App. 1987)) but instead from Roxana's uncontaminated aquifer. And there is no suggestion that the village supplies them from the aquifer because the groundwater is polluted (though what difference that would make to the property owners is unclear). If the expert's evidence is rejected, there will be no basis for the claim that the benzene levels in the groundwater are the common cause of the loss of property values that the class alleges, a loss it has not specified.

Real estate values have taken a drubbing in recent years, with the collapse of the housing bubble and the ensuing financial crisis. It can't be assumed that a decline in the value of residential property in Roxana (if in fact there's been a decline) is the result of proximity to a refinery that for all one knows has been leaking contaminants for the last 95 years without causing detectable harm. There are many things commonly found in soil beneath rural or suburban houses that homeowners would very much like not to enter their home (such as earthworms, fungi, ants, beetles, slugs, radon, chemical residues, thousands of different types of microbe—and groundwater), but as long as there is no danger of such unwanted visitors their underground presence should not affect property values. Benzene in the water supply is one thing; benzene in groundwater that does not feed into the water supply is quite another.

The district judge did not explore any of these issues. He treated predominance as a pleading requirement. He thought it enough at this stage that the plaintiffs *intend* to rely on common evidence and a single methodology to prove both injury and damages, and that whether the evidence and the methodology are sound and convincing is a question going to the strength of the plaintiffs' case and should be postponed to summary judgment proceedings or trial. But if intentions (hopes, in other words) were enough, predominance, as a check on casting lawsuits in the class action mold, would be out the window. Nothing is simpler than to make an unsubstantiated allegation. A district judge may not "refus[e] to entertain arguments against respondents' damages model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination." *Comcast Corp. v. Behrend*, *supra*, 133 S. Ct. at 1432–33. The judge should have investigated the realism of the plaintiffs' injury and damage model in light of the defendants' counterarguments, and to that end should have taken evidence. For if the defendants are right, there is no common issue, only individual issues that will vary from homeowner to homeowner: is there benzene in the groundwater beneath his home at a level of concentration that if the groundwater were drunk would endanger health (and is there any possibility it would enter the water supply); what is the source of the benzene in the groundwater beneath a given home (that is, who is the polluter who caused the groundwater to become polluted); could the presence of the benzene in that concentration cause any other form of harm; has the presence of the benzene reduced the value of his property; if so, how great has the reduction been. It is difficult to see how these issues can be managed in

the class action format. But in any event they must be engaged by the district judge before he can make a responsible determination of whether to certify a class.

So the certification order must be reversed, with directions that the judge revisit the issue of certification in conformity with the analysis in this opinion. But in so ruling we unsay nothing that we said in *Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910 (7th Cir. 2003), where we approved class certification in a suit that was superficially like this one because it involved a class of homeowners who were complaining about contamination of groundwater caused in that case by a solvent called TCE (trichloroethylene), which is believed dangerous to human health and which had been leaked by a nearby storage container. We said that "the questions whether Met-Coil leaked TCE in violation of law and whether the TCE reached the soil and groundwater beneath the homes of the class members are common to all the class members. The first question is particularly straightforward, but the second only slightly less so. The class members' homes occupy a contiguous area the boundaries of which are known precisely. … [T]he two questions … are not especially complex." *Id*. at 911–12.

In that case unlike this one, there was a single source of pollution (the storage container). And in that case unlike this one the leakage of the noxious solvent was claimed to have contaminated the water supply, as noted by the district court. *Mejdreck v. Lockformer Co.*, No. 01 C 6107, 2002 WL 1838141, at *1, *3 (N.D. Ill. Aug. 12, 2002). Our opinion indicates that only homes that relied on wells for their water would be affected by the TCE in the groundwater, see 319 F.3d at 911, yet a fall in the value of those homes because of

the contamination could affect the value of adjacent homes. The plaintiffs in this case have presented no theory, let alone credible evidence, of a connection between the leaks property values, or between specific defendants and the leaks and property values, that would justify a class action on behalf of all the property owners whose properties sit above groundwater that contains an amount of benzene considered dangerous to human health by regulatory authorities (more than 5 micrograms per liter)—if drunk. But, to repeat, there is, as yet anyway, no evidence that any of it *is* ever drunk.

REVERSED.