In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3067

LAWRENCE S. BRODSKY, individually and on behalf of others similarly situated,

*Plaintiff-Appellant*,

*v.*

HUMANADENTAL INSURANCE CO. d/b/a
HUMANA SPECIALTY BENEFITS,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 3233 — **John Robert Blakey**, *Judge*.

No. 17-3506

ALPHA TECH PET, INC., *et al*.,

*Plaintiffs-Appellants*,

*v.*

ESSENDANT CO., ESSENDANT INC., and ESSENDANT
MANAGEMENT SERVICES LLC,

*Defendants-Appellees*.

————————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 16 C 513 & 16 C 4321 — **Thomas M. Durkin**, *Judge*.

————————————

ARGUED APRIL 10, 2018 — DECIDED DECEMBER 3, 2018

————————————

Before WOOD, *Chief Judge*, and FLAUM and KANNE, *Circuit Judges*.

WOOD, *Chief Judge*. These appeals, which we have consolidated for purposes of disposition, both concern the Federal Communication Commission's "Solicited Fax Rule." Despite the decline and fall of the fax machine, litigation continues between fax advertisers and unwilling recipients of their messages. Behind all this is the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, as amended by the Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359, and as implemented through FCC regulations. The lead plaintiffs in our cases—Lawrence Brodsky and Alpha Tech Pet, Inc.—received faxed advertisements that did not comply (so they said) with the TCPA and the FCC's Solicited Fax Rule. Each plaintiff wanted to pursue litigation not just individually, but as the head of a class. And in each case, the district court refused to certify the proposed class, largely on the authority of the D.C. Circuit's decision in *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017) (Kavanaugh, J.). Our review of decisions on class certification, pro or con, is deferential. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012). We see no abuse of discretion here, and so we affirm the

orders of the district courts declining to certify the proposed classes.

# I

## A. Brodsky

We can be brief with the underlying facts of both cases. Plaintiff Brodsky is an insurance wholesaler. HumanaDental Insurance Company is a Wisconsin corporation that insures a number of dental plans; another Humana affiliate markets specialty products such as dental, vision, life insurance, and disability policies. We refer to those defendants collectively as Humana unless the context requires otherwise. Brodsky has agreements with many insurance companies, and he sells their products through various agents. One such agreement was with "Humana Insurance Company, Humana Health Plan, Inc., and all of their affiliates." In that contract, Brodsky agreed that Humana and its affiliates "may choose to communicate with [Brodsky] through the use of … facsimile to [his] … facsimile numbers." Brodsky accordingly provided Humana with a fax number ending in 0152.

On May 14, 2008, Brodsky's 0152 machine received two identical one-page faxes ("the subject faxes"). The pages indicated that they were sent by "Humana Specialty Benefits." These faxes were created by Humana's marketing department. They did not identify the person or entity to which they were directed. And, to complicate matters, the 0152 machine was not used exclusively by Brodsky; seven other insurance agents had permission to, and did, use it during the relevant time. The parties agreed that faxes identical to the subject faxes were successfully transmitted 19,931 times. Brodsky responded with his lawsuit against Humana.

B.  Alpha Tech Pet

The facts in this case are similar. Defendant Essendant and its affiliates are national distributors of office products, janitorial and sanitation supplies, breakroom supplies, technology products, industrial supplies, and automotive aftermarket tools and equipment. Alpha Tech alleged that the defendants transmitted unsolicited faxes, including eight advertisements that were sent between January 16, 2012, and April 26, 2012, to it and the other class members. The unwanted faxes advertised commercial products available from LaGasse, LLC, which at the time was a wholly owned subsidiary of United Stationers. United Stationers changed its name to Essendant Inc. in June 2015, and at the same time LaGasse LLC merged with Essendant Co.; Essendant Management Services LLC also allegedly played some role in the fax transmissions. We refer in this opinion to Essendant, the current name, for simplicity. The different roles each entity played are not material for our purposes.

According to Alpha Tech, the faxes that Essendant sent to it violated the TCPA and the Solicited Fax Rule because they did not include the required opt-out language. It sought to represent a class of all persons who received advertising faxes sent by Essendant or any of its affiliates or predecessors from May 1, 2011, to May 1, 2015. This was a huge proposed class: defendants estimate that it swept in approximately 1.5 million faxes, in 725 separate transmissions, to nearly 24,000 unique fax numbers.

## II

The *Brodsky* case began in Illinois state court as a putative class action raising claims under the TCPA, but it was

removed to the federal court. After removal, Humana answered and raised the affirmative defenses of pre-existing business relationship and consent. It pointed to the contractual language mentioned above in support of both defenses. Its marketing department created the faxes that Brodsky and other putative class members received. At the bottom of the page of each fax, in fine print, it said "If you don't want us to contact you by fax, please call 1-800-U-CAN-ASK."

The district court initially certified a class under Federal Rule of Civil Procedure 23(b)(3) of recipients of faxes that advertised insurance products sold by HumanaDental. In so doing, it rejected Humana's suggestion that it should wait until the FCC had a chance to rule on Humana's request for a retroactive waiver of the Solicited Fax Rule and until the D.C. Circuit handed down its decision in the then-pending *Bais Yaakov* litigation. But then the ground shifted. On November 2, 2016, the FCC's Consumer & Governmental Affairs Bureau granted Humana's petition for a waiver, and on March 31, 2017, the D.C. Circuit handed down *Bais Yaakov*, in which the court found that the Solicited Fax Rule could not be applied to the transactions before it. In so ruling, the court stated that the FCC had exceeded its authority under the TCPA when it issued the Solicited Fax Rule, 47 C.F.R. § 64.1200(a)(4)(iv). Humana promptly moved to decertify the class, and the district court did so on August 28, 2017. As we have noted, we then granted Brodsky's petition under Rule 23(f) for immediate review of the decertification decision.

The *Alpha Tech* case, which was handled by a different district court judge, is actually two cases: one that was filed in the Northern District of Illinois on January 14, 2016, and the other (*Craftwood II, Inc. v. Essendant, Inc.*) that was initiated in

the Circuit Court of Lake County, Illinois, on March 4, 2016, and later removed to the Northern District of Illinois and consolidated with *Alpha Tech*. Essendant tried to eliminate the class allegations with a motion to dismiss or strike, filed on March 28, 2016, but the district court denied that motion. About a year later, before anything else of consequence had occurred, the D. C. Circuit issued its decision in *Bais Yaakov*. On July 27, 2017, largely relying on *Bais Yaakov*, Essendant filed a preemptive motion to deny class certification. Alpha Tech responded with a motion for certification of three classes, covering 545 of the 725 fax templates Essendant had used. Nearly all of those faxes contained the following opt-out notice: "If you have received this fax in error, please accept our apologies and call toll free 877-385-4440 to be removed from our list." Alpha Tech criticized this notice on three grounds: (1) failure to provide a *fax* number for opt-out requests; (2) failure to state that it is unlawful for the sender not to respond within a reasonable time; and (3) failure to state that the recipient must identify the fax number to which the request relates. All these requirements appear in the Solicited Fax Rule. 47 C.F.R. § 64.1200(a)(4)(iii).

The district court issued an order denying class certification on November 3, 2017. It ruled that this court's decision in *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013), holding that the TCPA requires a compliant opt-out notice before a consent-based defense can prevail, did not apply to this situation. Instead, it agreed with the D.C. Circuit's ruling in *Bais Yaakov* striking down the Solicited Fax Rule, alternately calling that decision "binding" or at least "persuasive." In a footnote, it found additional support for its ruling in the waiver that the FCC by then had granted to the defendants. Last, with the regulation out of the picture, it found that individual

questions predominated and thus that class treatment was inappropriate. Alpha Tech sought interlocutory review of that decision, and we agreed to take the case.

### III

Because it sits at center stage in these controversies, we begin by setting out the critical parts of the Solicited Fax Rule:

(a) No person or entity may:

…

(4) Use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine, unless—

(i) The unsolicited advertisement is from a sender with an established business relationship … with the recipient; and

(ii) The sender obtained the number of the telephone facsimile machine through—

(A)    The voluntary communication of such number by the recipient directly to the sender, within the context of such established business relationship; …

(iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if [certain criteria are met].

…

(iv) A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(4)(iii) of this section.

47 C.F.R. § 64.1200(a)(4); see also 47 U.S.C. § 227(b)(1)(C). Most of this rule is relatively straightforward, but clause (iv) is anything but that. It is there that the FCC extends the statutory requirement for an opt-out notice to *all* faxes, not just those that are unsolicited. A firestorm broke out over the new rule. In an order addressing several challenges, the FCC upheld its validity but announced that it would grant retroactive waivers in light of the confusion the rule had produced. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 29 FCC Rcd. 13998 (2014) ("Anda Order"). Affected parties petitioned the D.C. Circuit for review of the Anda order, and the result was the *Bais Yaakov* decision.

The parties have engaged in a lengthy debate over the question whether *Bais Yaakov* is formally binding on this court, or if our obligation is only to give it that respectful consideration we would accord to any of our sister circuits' decisions. The problem arises from the Hobbs Act, which gives the courts of appeals exclusive jurisdiction to review FCC orders, 28 U.S.C. § 2342(a), and lays venue in either the D.C. Circuit or a regional court (with the Judicial Panel on Multidistrict Litigation setting venue when multiple petitions are filed). 28 U.S.C. § 2112(a)(3). The D.C. Circuit was thus the Hobbs Act court for something, but the question is what: to decide the validity of the Anda Order, or to reach back to 2006 and rule on the validity of the original Solicited Fax Order? The dispositional paragraph of the D.C. court's opinion is ambiguous:

> We hold that the FCC's 2006 Solicited Fax Rule is un-
> lawful to the extent that it requires opt-out notices on
> solicited faxes. The FCC's Order *in this case* interpreted
> and applied that 2006 Rule. We vacate that Order and
> remand for further proceedings.

852 F.3d at 1083 (emphasis added). A possible reading of this
paragraph, however, is as a statement that the court's ruling
extended only to the 2014 Anda Order. The petition for review
of that order was filed long after the deadline for challenging
the 2006 Order, which imposed the Solicited Fax Rule. The
question is thus what to make of the court's statement that the
2006 rule itself is unlawful. Is it dictum, or does it have bind-
ing force as a ruling pursuant to Hobbs Act review? The Sixth
Circuit opted for the latter interpretation in *Sandusky Wellness
Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th
Cir. 2017), even though the D.C. Circuit formally was review-
ing only the 2014 order. The Ninth Circuit took the same ap-
proach in *True Health Chiropractic, Inc. v. McKesson Corp.*, 896
F.3d 923 (9th Cir. 2018). But there are risks in using a later pe-
tition for review to sweep in some or all antecedent adminis-
trative decisions. Time limits matter—indeed, they are recog-
nized as jurisdictional for purposes of Hobbs Act review, see
*Cal. Ass'n of the Physically Handicapped, Inc. v. FCC*, 833 F.2d
1333, 1334 (9th Cir. 1987) (joining the Second, Fifth, Eighth,
and D.C. Circuits on that point). It is easy to see why: reliance
interests grow around administrative rulings that are not
challenged in a timely way before the proper court of appeals.

If our decision turned on the ultimate binding impact of
the D.C. Circuit's decision with respect to the 2006 Order, we
would pursue this matter further. But it does not, and thus we
do not need to decide whether we would read *Bais Yaakov* as

broadly as our sister circuits have done. There is no doubt that the D.C. Circuit vacated the order before it (*i.e.* the 2014 Anda Order) and held that the 2014 application of the 2006 Order was unlawful. In the end, therefore, this was an "as applied" decision, not an untimely attack on the 2006 Order. We can therefore assume that the 2006 Order is still in effect (though drained of a great deal of force, it seems), but that it must be construed consistently with the D.C. Circuit's decision on the 2014 Order, because that decision is binding on all courts of appeals through the Hobbs Act. And the question in our case is even narrower, because we are not reviewing the merits of either order. Instead, we must determine only whether, against the backdrop of these orders, the district courts here abused their discretion in finding class treatment inappropriate.

In answering that question, we start with the language of the TCPA. As amended by the Junk Fax Act, the TCPA prohibits the use of "any telephone facsimile machine … to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The Act then defines the term "unsolicited advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's *prior express invitation or permission*, in writing or otherwise." *Id.* § 227(a)(5) (emphasis added). There are exceptions to the prohibitions on sending unsolicited faxes, including situations where the sender has an established business relationship with the recipient, the sender obtains the recipient's fax number through some sort of voluntary communication, and where the unsolicited message has "a notice meeting the requirements under paragraph (2)(D)." *Id.* § 227(b)(1)(C)(i)–(iii). Such a notice must (1) be clear and

conspicuous, (2) be located on the first page of the ad, (3) must state that the recipient may opt out from future unsolicited ads, and (4) must include a "cost-free mechanism" to send an opt-out request to the sender. *Id.* § 227(b)(2)(D).

As we noted earlier, in 2006 the FCC decided to issue a new rule related to the third of those requirements—the opt-out notice. See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005,* 71 Fed. Reg. 25,967, 25,971–72 (May 3, 2006) (now codified at 47 C.F.R. § 64.1200(a)(4)(iv)). The result was the so-called Solicited Fax Rule we have been discussing. The rule earned that name because it requires the sender of a faxed advertisement to include an opt-out notice even when the ad is sent to a person from whom the sender did obtain permission (or, roughly put, a sender who solicited the fax). As the D.C. Circuit put it, "[i]n other words, the FCC's new rule mandates that senders of *solicited* faxes comply with a statutory requirement that applies only to senders of *unsolicited* faxes." 852 F.3d at 1080.

For purposes of the class certification decision, this history tells us that the legality of the defendants' actions may end up depending on whether the fax was sent with permission (legal) or not (illegal), and it may also turn on the adequacy of the opt-out notices on the faxes in question. The consequences for a firm that violates the TCPA can be dire when it is facing not just a single aggrieved person, but a class. The statute provides a private right of action to collect either actual damages or $500 *per violation* in statutory damages. See 47 U.S.C. § 227(b)(3)(B). Whether that means $500 per fax, or $500 per transmission, the dollars roll up quickly. The stakes for the defendants in our cases are substantial.

We agree with the D.C. Circuit (and the Sixth and Ninth) that, at a minimum, it is necessary to distinguish between faxes sent with permission of the recipient and those that are truly unsolicited. The question of what suffices for consent is central, and it is likely to vary from recipient to recipient (or so the district court reasonably could have concluded). *Cf. Blow v. Bijora, Inc.*, 855 F.3d 793, 804–06 (7th Cir. 2017) (excluding from summary judgment potential class members "who provided no consent at all or whose consent was more limited"). Brodsky admits that he had a market agreement, and thus a pre-existing business relationship, with Humana, and that he expressly agreed in his market agreement that Humana could communicate with him by fax. Humana did so, and it even added a telephone number Brodsky could use if he wanted to stop receiving those faxes. But even if, as Brodsky has argued, this agreement somehow fails to establish *his* consent, we do not know what kind of pre-existing arrangement may have existed between Humana and the other fax recipients that Brodsky wants to represent. These are the hallmarks of an issue that requires individual scrutiny. See *Howland v. First Am. Title Ins. Co.*, 672 F.3d 525, 534 (7th Cir. 2012) (holding that a "transaction-specific inquiry prevents class treatment").

We must also take into account the fact that the FCC granted retroactive waivers of compliance with the Solicited Fax Rule for both sets of defendants.[1] The waivers cover faxes

---

[1] On November 14, 2018, FCC Consumer and Governmental Affairs Bureau Chief Patrick Webre issued an order eliminating the 2006 Solicited Fax Rule and dismissing as moot pending applications for retroactive waivers like those received by defendants. Webre Order, DA 18-1159

sent before April 30, 2015. See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 31 FCC Rcd. 11943 (2016) (Humana Order); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 8598, 8613 (2015) (United Stationers Order). While the legal underpinnings of these orders were called into doubt by the D.C. Circuit's vacation of the Anda Order, neither the Humana Order nor the United Stationers/Essendant Order was appealed as part of *Bais Yaakov*, and so neither one was vacated by the D.C. Circuit. Furthermore, nothing in the reasoning of *Bais Yaakov* undermines the soundness of *relieving* these two companies from the strictures of the Solicited Fax Rule. While this might indicate that there is a common question on the effect of the waivers that affects all class members, the district courts in our two cases were within their rights to conclude that there are enough other problems with class treatment here that a class action is not a superior mechanism for adjudicating these cases. See *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).

The final questions are whether the waivers have any effect on the availability of a private right of action and whether that issue is better handled through individual litigation or a class. The TCPA allows a "person or entity" to bring "an action based on a violation of this subsection or the regulations

---

(2018), available at https://docs.fcc.gov/public/attachments/DA-18-1159A1.pdf. Two days later, defendants' counsel alerted us to this order as additional relevant authority pursuant to Federal Rule of Appellate Procedure 28(j). While we appreciate counsel calling this development to our attention, Bureau Chief Webre's order has no effect on our analysis or decision. If anything, the rescission of the rule reinforces our conclusion that these cases are not proper candidates for class treatment.

prescribed under this subsection" for injunctive relief, actual damages, or statutory damages. 47 U.S.C. § 227(b)(3). The alleged violation in our case is regulatory. We reject the plaintiffs' argument that the statute itself requires opt-out notice on solicited faxes; it does not, and nothing in *Holtzman* supports engrafting such language on the statute. As the opening sentence of that opinion signals, the issue there had to do with *unsolicited* faxes that had no opt-out language, not faxes sent with advance permission that did include some opt-out language. 728 F.3d at 683. In addition, *Holtzman* arose at a time before the Solicited Fax Rule was challenged. It thus has no bearing on the issues now before us.

As a regulatory matter, the Solicited Fax Rule is subject to the general rule regarding "suspension, amendment, or waiver of rules." See 47 C.F.R. § 1.3. That provides, in relevant part, that "[a]ny provision of the rules may be waived by the Commission on its own motion or on petition if good cause therefor is shown." *Id.* Concerned about the confusion that the Rule had caused, the FCC invoked this authority when it issued the Humana and United Stationers waivers. See, *e.g.,* Humana Order, 31 FCC Rcd. at 11951. But once again, even if the district court were eventually to conclude that the waivers are invalid, that is just one question: issues concerning solicitation, permission, pre-existing relationships, and the like, would remain as obstacles to class treatment.

## IV

We do not rule out the possibility that some of the recipients of Humana's or Essendant's faxes were the victims of the practices prohibited by the TCPA as amended. Some may not have had pre-existing contractual arrangements, some may not have signaled their consent to receiving faxes, and some

senders of faxes may not have received waivers of the Solicited Fax Rule from the FCC or the waivers might be flawed. We thus express no opinion on the ability of individual plaintiffs to go forward with these suits. We hold only that neither of the district courts in these cases abused its discretion when it concluded that the criteria for a class action under Rule 23(b)(3) are not met.

We therefore AFFIRM the orders of the district courts in both Case No. 17-3067 and in Case No. 17-3506, denying class certification.