In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1831

CHRISTINE DANCEL,

*Plaintiff-Appellant,*

*v.*

GROUPON, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-02027 — **Ronald A. Guzmán**, *Judge.*

ARGUED SEPTEMBER 16, 2019 — DECIDED DECEMBER 18, 2019

Before BAUER, BRENNAN, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Is a person's username a part of her identity? That is a complex question, but one that Christine Dancel proposes can be resolved categorically for all usernames and all people. The district court thought otherwise and declined to certify a class because it would have to be decided username-by-username whether each one is an aspect of a given class member's identity, at least as that word is defined by the Illinois Right of Publicity Act (IRPA), 765

ILCS 1075/5. Dancel contends this rejection of her theory was an improper decision on the merits of her and the class's claims, and the court therefore abused its discretion at the class-certification stage. We see no such mistake in the district court's reasoning and affirm the order denying certification.

## I. Background

Groupon, Inc. is an online marketplace that sells vouchers for other businesses. Groupon's website gives each business its own page with information about the business and the discounts available. Between April 2015 and February 2016, some visitors to the site could scroll down each page to see a "Photos" section that displayed up to nine pictures. If the visitor clicked a button, the page would reveal up to eighteen more. Groupon collected and displayed these pictures automatically using what it calls the "Instagram Widget." As its name suggests, this Widget pulled publicly available pictures from the social networking service Instagram. It selected which pictures to assign to each page based on data linking the photos to the advertised business's location. When a Groupon visitor hovered her cursor over a displayed photo, the Widget would show the unique, user-selected username of the Instagram account whose photo was being displayed and a caption, if the user had attached one to the photo.

Dancel is an Instagram user, and like all Instagram users, her account had a username—namely, "meowchristine." In 2015, Dancel uploaded to her account a picture of herself and her boyfriend visiting Philly G's, a restaurant in Vernon Hills, Illinois. This picture was one of several Groupon displayed on Philly G's page while the Widget was active.

Dancel alleges that Groupon's inclusion of her photo and username on Philly G's page violated the IRPA, which prohibits the use of a person's identity—meaning an "attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener"—for commercial purposes without consent. 765 ILCS 1075/5, 30. She filed suit in the Circuit Court of Cook County and sought to maintain the action on behalf of a class of "Illinois residents" whose photographs Groupon had similarly shown on its pages. The parties litigated in that posture for two years until Dancel moved to certify a different class, defined as "[a]ll persons who maintained an Instagram Account and whose photograph (or photographs) from such account was (or were) acquired and used on a groupon.com webpage for an Illinois business." The class also had a sub-class: "All members of the Instagram Class whose likeness appeared in any photograph acquired and used by Groupon."

In response to these new class definitions, Groupon removed the case to federal court. Dancel tried to argue this removal came too late, but the district court disagreed, denied her motion to remand to state court, and proceeded to decide whether to certify her proposed class under Federal Rule of Civil Procedure 23(b)(3). That provision requires, among other things, "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Dancel identified the common question that united the class as "whether Instagram usernames *categorically* fall within the statutory definition of 'identity.'" She distinguished this inquiry from the individualized question "whether any *particular* username identifies an individual."

The district court found Dancel's categorical theory "un-persuasive." Though the court accepted that a common question existed as to whether any username identifies an individual, that question was not enough to certify a class because it "ignore[d] the individual inquiry that is the essence of determining 'identity' under the IRPA." The district court listed several of the usernames belonging to class members—e.g., eawhalen, artistbarbie, isa.tdg, loparse, johanneus—and concluded that it was "simply impossible to make any type of across-the-board determination as to whether these names 'identify' a particular person, as that term is defined by the IRPA." Because it determined that the IRPA, as applied to the facts of this case, required a "username-by-username (photo-by-photo)" inquiry, the court found that common questions would not predominate over individual ones and denied certification. Dancel petitioned for review of that decision, and we granted the petition. Fed. R. Civ. P. 23(f).

## II. Jurisdiction

We start our analysis where we left off after our previous opinion: the district court's jurisdiction. *Dancel v. Groupon, Inc.*, 940 F.3d 381, 386 (7th Cir. 2019). The Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), extends federal subject-matter jurisdiction to a proposed class action that is, among other things, minimally diverse—meaning one member of the plaintiff class is a citizen of a state different from any one defendant. Groupon is a Delaware corporation with its principal place of business in Illinois; it is therefore a citizen of those two states. Instead of alleging the citizenship of even one diverse class member, Groupon asserted only that the class "undoubtedly would include at least some undetermined number of non-Illinois and non-Delaware citizens as class

plaintiffs." We agreed with Dancel that this allegation failed to carry Groupon's burden and directed Groupon to amend its notice of removal. *Dancel*, 940 F.3d at 384–85. Though 28 U.S.C. § 1653 permits a party to amend jurisdictional allegations on appeal, *see Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012), Groupon said it required discovery to make those amendments, so we ordered a limited remand for the district court to oversee that discovery and confirm its jurisdiction. *Dancel*, 940 F.3d at 386.

On remand, Groupon amended its allegations and supplemented its notice of removal with three affidavits in which the affiants attested to their significant ties to their home states, which are not Illinois or Delaware. Groupon also provided the incorporation and registration documents for two Instagram-using businesses based in California and Missouri. Dancel argued that these businesses and one of the affiants fell outside the class definition, but she conceded that the other two affidavits belonged to putative class members domiciled in Virginia and California, respectively. *See Myrick v. WellPoint, Inc.*, 764 F.3d 662, 664 (7th Cir. 2014) ("Citizenship means domicile (the person's long-term plan for a state of habitation) rather than just current residence."). The district court saw no reason to conduct an evidentiary hearing to peer beyond Groupon's allegations and Dancel's concession (which was well supported by Groupon's evidence anyway), and neither do we. *See Tilden v. Comm'r*, 846 F.3d 882, 887 (7th Cir. 2017) (explaining that parties can agree to the fact of the parties' citizenship—as distinct from the existence of jurisdiction—if the agreement is not collusive). With these amended allegations that at least one class member was a citizen of Virginia and another of California, Groupon has shown minimal diversity between it and the proposed class, and the district court's

exercise of jurisdiction was proper. We may now move on to the class-certification decision.

### III. Class Certification

Dancel argues that the district court improperly addressed the merits of her IRPA claim at the class-certification stage, and that, to the extent those merits are not off limits, the court resolved them incorrectly. She posits that the individual content of each username is irrelevant to the class's claims. In her view, an Instagram username is inherently an identity under the IRPA because it is unique—no two accounts can use the same username at the same time. Because this theory ignores the usernames' content, Dancel maintains it cannot depend on the individual usernames of the class members but only on the common evidence describing the general function of Instagram usernames and the Instagram Widget. She primarily insists that she is entitled to test her theory, regardless of its validity, on a class-wide basis because Rule 23 prohibits a court from resolving the merits of a claim at the class-certification stage. To the extent that the court can consider the validity of her theory, she contends the district court imposed a higher evidentiary burden than the IRPA requires.

We review the district court's certification decision for an abuse of discretion, but a district court necessarily abuses its discretion if its reasoning is based on a legal error, like those Dancel asserts. *See Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 1465 (2019). We conclude that the district court did not legally err in its interpretation of the Federal Rules of Civil Procedure or the IRPA and did not otherwise abuse its discretion.

**A. Rule 23(b)(3)**

A plaintiff seeking class certification bears the burden of proving that her proposed class meets the four requirements of Federal Rule of Civil Procedure 23(a), as well as those for one of the three types of classes identified in Rule 23(b). *Beaton*, 907 F.3d at 1025. We, like the district court, need not reach the Rule 23(a) elements, because we agree that Dancel has failed to meet those of Rule 23(b)(3)—the provision on which she relies. *See Riffey v. Rauner*, 910 F.3d 314, 318 (7th Cir. 2018), *cert. denied sub nom. Riffey v. Pritzker*, 139 S. Ct. 2745 (2019).

Federal Rule of Civil Procedure 23(b)(3) requires a district court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members." This distinction is often easier stated than applied:

> An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (alteration in original) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012)); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) ("If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." (quoting

*Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005))). One way of establishing that common evidence can supply an answer to a common question is to consider whether an individual class member could have relied on that same evidence in an individual action. *Bouaphakeo*, 136 S. Ct. at 1046.

In resolving whether a common question exists or predominates, the Supreme Court has emphasized that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *see also Messner*, 669 F.3d at 811 ("[T]he court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits."). Critically, "Rule 23 allows certification of classes that are fated to lose as well as classes that are sure to win." *Schleicher v. Wendt*, 618 F.3d 679, 686 (7th Cir. 2010). Still the merits are not completely off limits. Rule 23 is more than "a mere pleading standard," and the court must satisfy itself with a "rigorous analysis" that the prerequisites of certification are met, even if that analysis has "some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). We have described this analysis as involving a "peek at the merits" that is "limited to those aspects of the merits that affect the decisions essential under Rule 23." *Schleicher*, 618 F.3d at 685.

The Supreme Court discussed the limits and extent of this peek in *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455. There the Court confronted a fraud-on-the-market securities class action. The underlying securities fraud claim required a plaintiff to prove, among other things, a material misstatement or omission and reliance on that misrepresentation. *Id.* at 460–61. Ordinarily, reliance is a fact-

intensive individual question that is not conducive to class-wide resolution. *Id.* at 462–63. Under the fraud-on-the-market theory, however, a plaintiff can demonstrate reliance by common proof, on the inference that a security traded in an efficient market reflects all publicly available material information, so all buyers presumptively relied on false public statements when purchasing the security. *Id.* at 461–62. In order to certify a class under this theory, a plaintiff is required to affirmatively prove that the market is efficient and that an alleged misrepresentation was publicly made. *Id.* at 473. Not so with materiality, the Supreme Court held.

The Court gave two reasons why a plaintiff does not need to establish materiality in order to certify a class but can wait to prove it at the merits stage. First, materiality is an objective question that can be proven through common evidence. *Id.* at 467. Second, the Court emphasized that "there is no risk whatever that a failure of proof on the common question of materiality will result in individual questions predominating." *Id.* at 467–68. This is so because materiality is an element of every plaintiff's securities-fraud claim and not *just* a prerequisite to the class's fraud-on-the market theory, as publicity and market efficiency are. *Id.* at 468, 473–74. "As to materiality, therefore, the class is entirely cohesive: It will prevail or fail in unison. In no event will the individual circumstances of particular class members bear on the inquiry." *Id.* at 460.

The parties agree that the IRPA's identity element is like materiality in that it, too, is an objective-inquiry—it asks whether an attribute would identify a plaintiff to the "ordinary, reasonable viewer or listener," 765 ILCS 1075/5. Dancel concedes, however, that her theory is different from materiality, in that if a class is certified and it is proven that a username

is not *categorically* an identity, Dancel and the class's claims would "remain live," *Amgen*, 568 U.S. at 474. Each person could still try to prove, after decertification, that his or her username is an identity in a way different from usernames generally.

This distinction is not fatal to class certification, Dancel argues, because this court has permitted certification even when there was a risk the court might later need to decertify the class. In *Bell v. PNC Bank, N.A.*, 800 F.3d 360 (7th Cir. 2015), we affirmed a district court's certification of a class alleging PNC had a policy requiring employees to work unpaid overtime. *Id.* at 372. We recognized that, if the policy were found not to exist then the class would be decertified, and the class members could still bring individual claims. Those individual claims, though, "would be based on an entirely different legal theory"—"Employee A alleging that her manager, Manager B, forced her to work off-the-clock." *Id.* at 378. The class's policy-based theory would still "prevail or fail for the class as a whole." *Id.* Similarly, in *Costello v. BeavEx, Inc.*, 810 F.3d 1045 (7th Cir. 2016), we reversed the denial of certification to a class of couriers arguing that they were employees—not independent contractors—of a delivery company, BeavEx. *Id.* at 1048–49. Under state law, all workers were employees unless the employer could prove three elements, but the district court thought only the second element (whether the plaintiffs performed work outside the usual course of the employer's business) was subject to common proof. *Id.* at 1059. The district court refused to consider whether this common question predominated for fear of deciding the merits of the other elements. *Id.* at 1060. We explained that even if only this single element was subject to common proof, that did not prevent certification. *Id.* If the plaintiffs won on that element, then all

the couriers would be employees notwithstanding the other elements; if BeavEx won, then it would not have to relitigate the second element against each plaintiff. *Id.* Regardless of the way the evidence turned out, this common answer would represent a significant aspect of the case. *Id.*

Dancel's theory is different from those in *Bell* and *Costello* because it presents a question that is common only if she is right. If the class in *Bell* lost on its theory, no member could argue that PNC had a policy only with respect to her overtime; nor could an individual courier in *Costello* argue that BeavEx's usual course of business included delivery in his situation but not the class's. The question—does this policy exist? is couriering BeavEx's usual business?—was common regardless of its answer. If the common proof failed as to that answer, the plaintiffs could not use individualized proof in its stead. Any individual class member with a claim remaining would have to rely on different proof to answer a different question to establish the defendant's liability.

In contrast, the answer to Dancel's proposed common question—are usernames categorically identities under the IRPA?—matters not only for the merits but for commonality. If the answer to that question is yes, then one significant aspect of the case can be resolved in the class's favor (if, as a factual matter, Groupon used the usernames within the meaning of the IRPA). But if usernames are not categorically an identity under the IRPA, and the court decertified the class, then the same element would remain entirely subject to dispute for each plaintiff. Nothing significant will have been decided, because each member could provide individualized evidence—her username's content—on top of the common evidence to prove her username is an identity. Indeed,

because each username necessarily has some content, whether it be meowchristine or isa.tdg or loparse, the individual claims would not be hindered by the preclusion of a content-ignorant theory. Class members would be prohibited only from arguing again that all usernames are categorically an identity—that is, from certifying another class.

This difference arises from the fact that Dancel's proposed common question is whether identity is a common or an individualized question in the first place. Must identity be proven through "evidence that varies from member to member" (the username's content) or can "the same evidence" (its being a username) "suffice for each member to make a prima facie showing"? *Bouaphakeo*, 136 S. Ct. at 1045. This is not a question that can be saved for after certification; it is precisely the question the court must answer at certification. As we said in *Bell*, "[a] proposed class of plaintiffs must prove the *existence* of a common question … but it need not prove that the answer to that question will be resolved in its favor." 800 F.3d at 376. Like PNC, though, Dancel has "conflated [these] two inquiries," *id.*, by failing to separate her argument for why a common question exists with an argument that the question should be resolved in her favor. A court cannot decide the latter, but it *must* decide the former—and it must police this fine line or else reduce certification to a mere pleading standard.

The Third Circuit faced a situation like this in *Gonzalez v. Corning*, 885 F.3d 186 (3d Cir. 2018). The plaintiff there alleged that the defendant's shingles were defectively designed because some would not last as long as advertised. *Id.* at 196. Whether any individual shingle would fail, though, could be determined only on review of that shingle. *Id.* The plaintiff came up with a theory to avoid this problem: the defect was

not that the individual shingle would fail, but the *chance* that any shingle would fail. *Id.* at 197. This theory presented a common, shared defect (the chance of failure) distinct from the individualized defect (the failure), and the plaintiff insisted that, under *Amgen*, he could test the merits of his common theory on a class-wide basis. *Id.* at 200. The Third Circuit saw this request for what it was, though—an "attempt to circumvent the need to identify a common defect by, in effect, redefining the concept." *Id.* at 198. By checking the plaintiff's superficially common theory for "coherence and legal foundation," the district court had not found that any class member's shingles were not defective and thereby decided the merits in violation of *Amgen*; it "merely applied Rule 23's predominance requirement." *Id.* at 201.

The same reasoning applies here. Dancel is trying to define the concept of identity in a common way so that it covers up individual questions that each class member might raise. Her use of the word "categorically" makes her theory universal, but only in the way "any question becomes universal when it includes the word 'all.'" *Id.* This is not a disingenuous tactic under Rule 23—it is no different from how a securities-fraud class can paper over the individualized question of reliance with the fraud-on-the-market theory under which *all* buyers are presumed to rely on material public statements. *See Amgen*, 568 U.S. at 461. Whether the tactic succeeds, however, must be determined before class certification by considering the substantive law underlying the putative class's claims. *See* Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 104 (2009).

The district court, then, was right to identify the starting point as "the substantive elements of plaintiffs' cause of action

and … *the proof necessary for the various elements.*" *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981) (emphasis added). If the proposed common proof could be enough to carry a prima facie case on an element for an individual plaintiff, in an individual case, then that element presents a common question that can predominate for a class action. *Bouaphakeo*, 136 S. Ct. at 1045–47; *Messner*, 669 F.3d at 815; *see also Costello*, 810 F.3d at 1060 ("Plaintiffs have demonstrated that common questions predominate by making out a prima facie claim … based on evidence common to the class."). Here the present dispute is precisely what evidence is needed to make a prima facie case for the identity element under the IRPA. Would facts common to all Instagram usernames (i.e., their innate uniqueness) suffice, or would a plaintiff need to show something more, something about *her* username, to meet her initial burden? Though this question overlaps with the merits, it is also "vital to any sensible decision about class certification," *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001), and the district court was right to decide it before certifying a class. We must now determine whether the court correctly decided it.

**B. The IRPA**

We start with the substantive elements of an IRPA claim. The IRPA prohibits "us[ing] an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person." 765 ILCS 1075/30(a). A plaintiff must thus prove (1) the appropriation of one's identity, (2) without one's consent, (3) for another's commercial benefit. *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 929 (Ill. App. Ct. 2013). The IRPA defines identity as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable

viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS 1075/5. Name, in turn, "means the actual name or other name by which an individual is known that is intended to identify that individual." *Id.*

Dancel argues that all Instagram usernames are names or identities under the IRPA because an ordinary, reasonable viewer would know that a username is intended to identify one and only one user. Because a username is innately unique, Dancel contends, the viewer would not need to know what the username is to know that it identifies an individual.

Dancel supports her categorical rule by comparing usernames to email addresses, but her analogy cuts against her. In *United States v. Hastie*, 854 F.3d 1298 (11th Cir. 2017), the Eleventh Circuit concluded that email addresses can qualify as "personal information" under the Driver's Privacy Protection Act, 18 U.S.C. § 2721, which defines the term as "information that identifies an individual." *Hastie*, 854 F.3d at 1301 (citing 18 U.S.C. § 2725(3)). This was so, the court explained, because "[e]mail addresses often expressly include the account holder's name, affiliated organization, or other identifying information." *Id.* at 1303. As is critical for our purposes, the court did not hold that email addresses categorically identify an individual, only that they *often* did, and they often did so only because of their content, not their inherent nature as email addresses. *See also Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) (recognizing that email addresses "*can be* identified as applying to particular individuals" (emphasis added)).

A username's content, and not its nature, is likewise necessary to decide whether it is an identity under the IRPA.

Categorically, Instagram usernames identify only Instagram accounts. The IRPA, however, requires more than that. It demands that an attribute, even a name, serve to identify an individual. And not just *an* individual but "*that* individual," the one whose identity is being appropriated. This is a comparative exercise that depends on both the specific individual and the specific appropriated attribute in question and cannot be solved categorically here. The common evidence that Dancel proposes she will provide—that usernames are unique, the Instagram Widget collected usernames, and Groupon's deal pages delivered those usernames to visitors—does nothing to answer the question whether any given username identifies that specific individual who is behind that username and its associated account. So, when Dancel insists that she is not asking "whether any *particular* username identifies an individual," she gives up the game. Whether the appropriated attribute serves to identify a particular person is, as the district court said, the "essence of determining 'identity' under the IRPA." Dancel cannot answer this question for herself or for any putative class member with only her proposed common evidence, and so she cannot develop, for each class member, a common prima facie case under the identity element of an IRPA claim.

Dancel insists that this individualized inquiry is inconsistent with the IRPA's broad scope, which is intended to protect lay people's identities. She argues that the content of a username could matter only if the person needed to know to whom the username belonged from just the username itself. The Illinois common law had just such a "notoriety" element, whereby the plaintiff needed to show her identity had "intrinsic value," like a celebrity's might. *Dwyer v. Am. Exp. Co.*, 652 N.E.2d 1351, 1356 (Ill. App. Ct. 1995). As Dancel rightly notes,

though, the IRPA has supplanted the common law right of publicity. 765 ILCS 1075/60; *Trannel*, 987 N.E.2d at 928. So, a plaintiff need not show her identity has value to prove a claim under the IRPA. She still must show, however, that it is *her* identity that the defendant appropriated. The Appellate Court in *Tranell v. Prairie Ridge Media*, thus, did not ask whether a reasonable person would know who Karen Tranell, winner of the 2009 *McHenry County Living* gardening contest, was based only on her photograph. 987 N.E.2d at 926. It did, however, emphasize that the photograph "depict[ed] plaintiff and her daughter smiling at the camera," and reviewed several other photographs for whether the subjects were recognizable. *Id.* An individual's photograph, like her name, is expressly protected by the IRPA, but that protection extends only so far as that photograph, that name, that *user*name "serves to identify *that* individual to an ordinary, reasonable viewer." 765 ILCS 1075/5 (emphasis added). Not all photographs, names, or usernames will do so, and whether any does must be answered with individual proof beyond the category into which the attribute falls.

Even if individual proof is necessary, Dancel proposes that she could provide it through class members' affidavits attesting to their ownership of their usernames. We have permitted district courts, in their discretion, to use individual affidavits to identify class members after liability is established class-wide, *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 672 (7th Cir. 2015), or to resolve individual merits questions after resolution of class issues, *Beaton*, 907 F.3d at 1030. Dancel's proposal goes much further than this. She asks to use class members' affidavits not to clean up individual questions left over after some other, common question has been decided, but to provide individual proof for the same question that she says can

be resolved through common proof. Given this contradiction, we need not decide whether it would ever be permissible to resolve the IRPA's identity element this way (for example if she had identified some other, predominating common question). The district court here did not abuse its discretion.

We emphasize that neither we nor the district court have decided the merits of any putative class member's claim. Some Instagram usernames—maybe a great many of them— might qualify as identities under the broad definition in the IRPA. An ordinary, reasonable viewer might recognize that meowchristine serves to identify Christine Dancel, or that isa.tdg, artistbarbie, and loparse serve to identify their respective users. We cannot say. What we can say is, under the IRPA, that ordinary, reasonable viewer would need to have evidence of which username, which account, and which person it was linking before it could make that decision. This individualized evidentiary burden prevents identity from being a predominating common question under Rule 23(b)(3).

## IV. Conclusion

We affirm the district court's order denying class certification.