In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-3522

ANDREA SANTIAGO,

*Plaintiff-Appellee,*

*v.*

CITY OF CHICAGO,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19-cv-4652 — **Matthew F. Kennelly**, *Judge.*

_____

ARGUED SEPTEMBER 28, 2021 — DECIDED DECEMBER 13, 2021

_____

Before FLAUM, KANNE, and SCUDDER, *Circuit Judges.*

KANNE, *Circuit Judge.* Andrea Santiago, a severely disabled Chicago resident, would leave her van parked on the street in front of her home for extended periods of time. In 2018, pursuant to the Chicago Municipal Code, her van was towed, impounded, and disposed of. She sued the City of Chicago on her own behalf and on behalf of others similarly situated, challenging the constitutionality of various aspects of the City's scheme, among other things. She moved the district

court to certify her suit as a class action, and the district court granted her motion in part. However, because the class certification order does not fully demonstrate the "rigorous analysis" required by Rule 23, an approval, at this point, constituted an abuse of discretion. We therefore vacate and remand for further consideration.

## I. BACKGROUND

### A. Factual Background

Santiago is severely disabled. A childhood bout with polio left her unable to move any of her extremities. She also suffers from multiple sclerosis. She therefore uses a wheelchair to move around and cannot drive. Additionally, Santiago's primary language is Spanish, and she does not read, speak, or write English effectively. Consequently, she relies on her daughter, Lisandra Velez, for transportation, translation, and assistance with English-based transactions and daily tasks.

Although Velez drove for Santiago, the wheelchair-accessible van they used was owned by Santiago. Velez testified that she used the van "very sporadic[ally]" to take her mother to appointments and activities. She estimated that they used the van at least four times per year, and that it "would sit for months at a time sometimes without being moved." In between uses, it would be parked on the street in front of their home.

On May 7, 2018, someone called the City's non-emergency services number to complain that Santiago's van was abandoned. On June 5, an investigator visited Santiago's vehicle, reported it as abandoned, and affixed a "Tow Notice" sticker to one of its windows. Among other things, the Tow Notice explained that the vehicle needed to be moved by a certain

date to avoid being towed. Velez saw the notice, removed it from the window, did not tell Santiago about it, took her to run some errands, and parked the van in a different spot on the same street upon returning. Nonetheless, on June 13 a tow driver towed Santiago's van to an impound lot.

When Velez discovered that the van was missing, she attempted to locate it, but was unable to do so until several days later. Velez determined which impound lot had the van, and then learned from employees at the lot that she needed a notarized letter from Santiago to retrieve the van. She returned with a notarized letter but was told it was insufficient. Then, while she was figuring out the next steps, an employee notified her that her car had been destroyed.

In between the towing of Santiago's van and its disposal, the City mailed two identical "Vehicle Impoundment Notices" to Santiago on the same day. The notices explained that without further action by Santiago within fifteen days, her vehicle would be disposed of. Velez disputes, however, that she or Santiago ever saw these notices.

### B. Tow, Impoundment, and Disposal Procedures

In Chicago, it is unlawful to abandon any motor vehicle on any public way. Chi. Mun. Code § 9-80-110(a). In relevant part, vehicles are "deemed to have been abandoned if … [they have] not been moved or used for more than seven consecutive days and [are] apparently deserted." *Id.* If a vehicle is deemed abandoned, certain City employees are authorized to issue a notice of parking violation and then remove the vehicle to a City pound. *Id.* § 9-92-030(d).

When a vehicle is impounded in this way, the Department of Police or the Department of Streets and Sanitation must

identify the owner within ten days and send the owner notice of the impoundment. *Id.* § 9-92-070(a). If the vehicle is registered, the notice must be sent by certified mail. *Id.* If not, it must be sent by first-class mail. *Id.*

If an abandoned and impounded vehicle remains unclaimed for eighteen days after the notice of impoundment is mailed, the Superintendent of Police or the Commissioner of Streets and Sanitation may dispose of the vehicle "if, during that 18-day period," they send the owner "an additional notice by first class mail." *Id.* § 9-92-100(a). Unless the vehicle's value substantially exceeds its scrap value, it shall be disposed "to a person licensed as an automotive parts recycler, rebuilder or scrap processor." *Id.* § 9-92-100(b).

In practice, the process begins when a resident makes an abandoned-vehicle complaint. An investigator visits the vehicle and determines if it falls into one of the categories of abandoned vehicles. For cars that lack registration, a sticker is affixed to the vehicle—not mailed—notifying the owner that the car is parked in violation of the municipal code. The tow-notice sticker that was in use when Santiago's car was deemed abandoned appears below:

**VEHICLE LOCATION** _____
Department of Streets and Sanitation — CITY OF CHICAGO

## TOW NOTICE

This vehicle is in violation of Section 9-80-110 of the Municipal Code of Chicago as an Abandoned Motor Vehicle.

☐ In a state of disrepair incapable of being driven in its present condition.

☐ Not being moved or used for more than seven consecutive days. Each day such vehicle remains so abandoned shall constitute a separate and distinct offense for which a separate penalty may be imposed.

☐ Has been left on the public way without state registration plates or a temporary state registration placard for two or more days.

This vehicle is in violation of Section 9-64-120 of the Municipal Code of Chicago.

☐ This serves as notice that the vehicle is parked unlawfully and may be towed seven days after the date of this notice.

This vehicle is in violation of Section 625 ILCS 5/4-201b of the Illinois Vehicle Code as an Abandoned Vehicle.

☐ A vehicle or part thereof abandoned on private or public property other than a highway, in view of the public for more than seven consecutive days. This vehicle must be removed from the public way/private or public property by _____ 20_____.
To be driven it must be properly licensed. Your failure to comply with the provisions of this ordinance will subject the vehicle to be towed and impounded by the City of Chicago.

☐ Has been found to be a hazardous dilapidated vehicle under Section 11-40-3.1 of the Illinois Municipal Code and may be towed Immediately.

Investigator _____ Badge No. _____ Ward _____

Sticker Issued _____ 20 _____. If you have any questions about this notice;
call (312) 746-4957 between 6 a.m. and 2 p.m.

For vehicles deemed abandoned because they were not moved for seven days, the investigator checks the second and second-to-last boxes and indicates a date by which the vehicle must be moved to avoid being towed. Notably, at the bottom of the notice there is a number that people can call if they have any questions.

On the date indicated, a tow driver is dispatched to the location where the vehicle was parked when the sticker was affixed to it. If the vehicle is still there, then the tow driver removes the vehicle and impounds it.

When it is impounded and inventoried, two identical Vehicle Impoundment Notices are printed and mailed separately, but on the same day, to the owner of the vehicle. These notices contain instructions for how to retrieve the vehicle and how to request a hearing to contest the validity of the tow and

associated charges, and a warning that the car will be disposed of if the owner does not act within fifteen days. When vehicles are disposed of, they are generally sold for fifteen dollars to the City's contractor, United Road Towing, Inc.

*C. Santiago's Claims*

Santiago's complaint comprises ten counts, divided between two purported classes of plaintiffs. Counts I to III were brought on behalf of a proposed "Tow Class" and focused on the City's pre-tow notice. Counts IV to X were brought on behalf of a proposed "Vehicle Disposal Class" and concerned the City's alleged failure to send a statutorily required additional notice to vehicle owners before their vehicles were disposed of.

In a March 18, 2020 order, the district court dismissed Counts II, IX, and X. It then terminated Santiago's pending motion for class certification to allow her to revisit it in light of the dismissal order. She promptly did and renewed the motion.

The claims that remained when Santiago filed her renewed motion for class certification were:

- Tow Class: Count I (Declaratory and Injunctive Relief); Count III (§ 1983 Due Process);

- Vehicle Disposal Class: Count IV (Declaratory and Injunctive Relief-Unlawful Disposal); Count V (Unjust Enrichment); Count VI (Mandamus); Count VII (Declaratory and Injunctive Relief-Takings); Count VIII (§ 1983 Takings).

*D. Class-Certification Order*

By the time the district court considered Santiago's motion for class certification, her proposed class definitions took the following forms:

> All individuals and entities who, since June 11, 2017, had their vehicle towed by the City of Chicago due to it being considered "abandoned" by the City under [Section 9-80-110(a)(b) of the Municipal Code of Chicago] and where the vehicle lacked current state registration at the time of the tow (the "Tow Class").

> All individuals and entities who, since June 11, 2014, had their vehicle towed—by or through the Department of Streets and Sanitation pursuant to Chapter 9-92 of the Municipal Code of Chicago—and disposed of by the City (the "Vehicle-Disposal Class").

Santiago sought class certification under two parts of Federal Rule of Civil Procedure 23: (b)(2) and (b)(3). Rule 23(b)(2) covers declaratory and injunctive relief, while Rule 23(b)(3) governs situations where common questions predominate over individual inquiries.

The district court found that neither the Tow Class nor the Vehicle Disposal Class could be certified under Rule 23(b)(2) because "Santiago ha[d] not alleged that she faces a real and immediate threat of future injury" sufficient to entitle her to prospective relief. (R. 80 at 13.) Therefore, it determined, she would not be an adequate representative for either proposed 23(b)(2) class. Seemingly, this means that Counts I, IV, VI, and VII did not make the cut for class certification, as all sought prospective relief. While the mandamus claim was not mentioned specifically, neither party has referred to the claim on

appeal or otherwise acted as though it continues to be relevant.

With respect to the certification of each class under Rule 23(b)(3), the district court found, in relevant part, that Santiago was an adequate representative and that common issues predominated. Regarding adequacy, the court "found nothing in the record to suggest that Santiago's interests are contrary to those of the proposed class members, that she is insufficiently interested, or that her counsel are unqualified or inexperienced." (R. 80 at 13.) The common issues that it found to predominate were the "adequacy of notice given to the proposed class members before the tow (the tow class) and the constitutionality of the City's standard practices (the vehicle-disposal class)." (*Id.* at 14.)

In rejecting the City's arguments that individual issues actually predominated in the Tow Class, the court relied exclusively on the fact that Santiago "is asserting only a facial challenge: the ordinance is unconstitutional because it fails to require adequate notice before a vehicle has been towed." (*Id.* at 14–15.) Therefore, "personal circumstances do not matter." (*Id.* at 15.)

It then pivoted to the Vehicle Disposal Class, rejecting the City's arguments "[f]or the same reasons already discussed" in its Tow Class analysis. (*Id.* at 16.) It also "overrule[d] the City's assertion that state law requires the vehicle-disposal class to show prejudice from the City's failure to strictly follow its ordinance" because the "class's takings claim is based in federal law, not state law." (*Id.*)

## II. ANALYSIS

We review the grant of a motion for class certification for an abuse of discretion, "which can occur when a district court commits legal error or makes clearly erroneous factual findings." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015) (citing *Reliable Money Ord., Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 498 (7th Cir. 2013)). "Our review is deferential, but exacting: 'A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites' for class certification have been met." *Id.* (quoting *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011)). "The party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence." *Id.* (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)).

Federal Rule of Civil Procedure 23 governs class actions. "Rule 23(a) sets forth four universal requirements for class actions: 'numerosity, typicality, commonality, and adequacy of representation.'" *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018) (quoting *Messner*, 669 F.3d at 811). "Rule 23(b) then identifies particular types of classes, which have different criteria. Where, as here, certification is sought under Rule 23(b)(3), common questions of law or fact must predominate over individual inquiries, and class treatment must be the superior method of resolving the controversy." *Id.*

The City challenges, on the same grounds, the district court's decisions to certify the Tow Class and the Vehicle-Disposal Class under Rule 23(b)(3). It asserts that the district court erred when it determined that Santiago is an adequate representative of the classes, *see* Fed. R. Civ. P. 23(a)(4), and when it determined that questions of law or fact common to

each class predominate over individual inquiries, *see* Fed. R. Civ. P. 23(b)(3). We will address these in reverse order.

*A. Predominance*

If Rule 23(a) is satisfied, a class action may only be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton*, 907 F.3d at 1029 (citing *Messner*, 669 F.3d at 815). "This requires more than a tally of common questions; the district court must consider their relative importance." *Id.* (citing *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014)). "On the other hand, not every issue must be amenable to common resolution; individual inquiries may be required after the class phase." *Id.* (citing *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 922 (7th Cir. 2016)). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). Fundamentally, this "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1777 (2d ed. 1986)).

We encounter a fatal flaw in the district court's order very early in our analysis. The Supreme Court has noted that "[c]onsidering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). The district court's order, however, does not discuss any of the elements of the underlying causes of action, nor in clear terms explain what the causes of action are. This and other clarity issues throughout the record have created difficulty on appeal.

As we briefly touched on above, it is not entirely apparent which claims survived to the class-certification stage, but ostensibly there are seven. The seven are divided between the two proposed classes. Santiago urged that the classes be certified under two different provisions of Rule 23. In its order, the district court analyzed the proposed classes under each provision, but never made clear which claims the analyses refer to. Did it analyze all claims in the Tow Class under Rule 23(b)(2) and then again under Rule 23(b)(3)? Did it do the same for the Vehicle Disposal Class? Or did it separate the claims into four distinct classes: Tow Class damages, Tow Class prospective relief, Vehicle Disposal Class damages, Vehicle Disposal Class injunctive relief? If it divided the claims this way, then which claims did it put into each class?

The district court appears to have organized its analysis around potential common questions rather than the claims at issue. It writes that "[t]he predominant issues in this case for each class are the adequacy of notice given to the proposed class members before the tow (the tow class) and the constitutionality of the City's standard practices (the vehicle-disposal class)." (R. 80 at 14.) Presumably, this means it analyzed

the Tow Class as though only Counts I and III are contained within it, both premised on an alleged due process violation. And if further divided, that means there is a proposed Tow Class for injunctive relief with Count I in it and a proposed Tow Class for damages with Count III's § 1983 claim in it. We could also venture that the Vehicle Disposal Class contains Counts VII and VIII in it, both premised on an alleged unconstitutional taking. And if further divided, that means there is a proposed Vehicle Disposal Class for injunctive relief with Count VII in it and a proposed Vehicle Disposal Class for damages with Count VIII's § 1983 claim in it.

We wonder, then, what happened to the mandamus and unjust enrichment claims? Neither appear to have been dismissed from the action, and both were purportedly brought on behalf of one of the classes. No one mentions the mandamus claim, but the unjust enrichment claim is a point of contention on appeal. The City argues that the district court "ignored the … unjust enrichment claim altogether." (Appellant's Br. at 9.) Santiago claims that "the City did not make any arguments below challenging the propriety of certifying [her] unjust enrichment claim." (Appellee's Br. at 10.) And the district court did not analyze the claim at all or connect it to the purported predominant takings issues in the Vehicle Disposal Class analysis. It does mention it in a parenthetical, though, as a justification for Santiago changing her proposed Vehicle Disposal Class definition to account for a five-year statute of limitations. So, did the district court include this claim in its class certification? We do not know.

If we assume the district court divided the claims as we did above, which there is some justification for, (*see* R. 80 at 17 ("The court denies plaintiff's request for certification of

injunctive relief classes under Rule 23(b)(2) … .")), then it is likely the case that the district court certified a Tow Class for damages regarding only a § 1983 due process claim and a Vehicle Disposal Class for damages regarding only a § 1983 takings claim.

If so, the district court should have begun its analysis with the elements of these claims. *See Erica P. John Fund, Inc.*, 563 U.S. at 809. Then it could have more clearly framed within those elements what it deemed to be the common and individual issues. By juxtaposing them in that way, the district court's predominance inquiry would have better "train[ed] on the legal or factual questions that qualify each class member's case as a genuine controversy." *Messner*, 669 F.3d at 814 (quoting *Amchem Prods., Inc.*, 521 U.S. at 623).

Only by properly circumscribing the claims and breaking them down into their constituent elements can a district court decide which issues are common, individual, and predominant. *Id.* at 815 ("If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005))); *see also Beaton*, 907 F.3d at 1029 (noting that the predominance inquiry "requires more than a tally of common questions; the district court must consider their relative importance").

Moreover, this exercise would crystallize the import of certain arguments, like whether Santiago had actual notice that her car would be towed or disposed of, and whether her claims are facial or as-applied challenges. *See* 1 Joseph M.

McLaughlin, *McLaughlin on Class Actions* § 3:12, Westlaw (database updated October 2021) ("A court must look beyond pleadings in order to properly understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful decision on class certification, as it must consider how a trial on the merits would be conducted.").

Because the district court did not engage in the detailed analysis that a Rule 23 decision requires, an abuse of discretion occurred.

### B. Adequacy of Representation

One of Rule 23(a)'s four core prerequisites to class certification is that the representative party—here, Santiago—must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

To be an adequate representative, "[a] named plaintiff must be a member of the putative class and have the same interest and injury as other members." *Beaton*, 907 F.3d at 1027 (citing *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017)). The "representative might be inadequate if he is subject to a substantial defense unique to him." *Id.* (citing *CE Design Ltd.*, 637 F.3d at 726, 728). "Conflicts of interest, as distinct from differences in entitlements, create an issue of adequacy of representation by requiring the class representative to choose between competing class members." *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012). But even if conflicts materialize, "it may be possible to resolve them by [creating] subclasses and appointing new class representatives" for them. *Id.*

The City's only argument here with respect to the Tow Class is that the district court erred in finding that Santiago is

an adequate representative because she is subject to a unique defense: that she received actual notice through Velez, who read and removed the sticker, that her car would be towed. Santiago contends that the district court properly concluded that actual notice does not preclude a plaintiff from challenging the notice's procedural sufficiency. In other words, in her view, the actual notice defense is irrelevant. This dispute centers around the proper interpretation of the holding in *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978).

The City attacks the district court's Vehicle Disposal Class adequacy ruling with the same type of argument. It asserts that, regardless of whether the City violated its Municipal Code by sending two notices on the same day, Santiago had actual notice through Velez that the van had been towed and impounded, and indeed Velez attempted to retrieve the vehicle before it was disposed of. Santiago responds that the district court was correct in its conclusion that she was an adequate representative. The district court, for its part, concluded that the City's argument "fails here too. A central issue in this case is whether sending two copies of the same notice at the same time meets the requirements of the ordinance, so on this point Santiago's situation is typical of that of the other class members. Moreover, all of the proposed vehicle-disposal class members challenge the sufficiency of the notice they received." (R. 80 at 12.)

The district court's analysis of the adequacy element for both classes suffers from the same deficiency that the predominance inquiry suffered from. Because the classes and claims are not clearly defined and because the district court does not attach its arguments to specific elements of the claims, we are not confident that the district court has conducted a rigorous

analysis. For the Tow Class, at a minimum, the district court should have mentioned the relevant claim, listed the elements, and explained how the *Memphis Light* actual-notice controversy relates to those elements.

Similarly, for the Vehicle Disposal Class, the district court should have identified the claim at issue and explained how the City's arguments relate to that claim. When the district court wrote that "all of the proposed vehicle-disposal class members challenge the sufficiency of the notice they received," it brought into relief one of the issues not fully addressed. Santiago challenges the sufficiency of the sticker notice in her due process claim in the proposed Tow Class. It is not relevant to the Vehicle Disposal Class. Here, a more rigorous analysis would have avoided conflating these arguments.

We believe the district court's less-than-rigorous analysis of this issue also constitutes an abuse of discretion.

* * *

Because it did not properly engage in the rigorous analysis that a class certification order requires, the district court in several ways abused its discretion. However, that is not to say that the errors of omission of the district court lead it to reach a result that was substantively incorrect.

We simply do not have enough information organized efficiently to reach a conclusion that the order of class certification is correct or incorrect; in fact, we are unable to reach any conclusions here about whether common issues predominate, whether Santiago is an adequate representative of either class, or whether she brings meritorious claims.

Therefore, we vacate the decision of the district court and remand for another try, if that is the course the parties choose

to chart. Once this case is back in the district court, the parties may want to consider the prudence of assisting the district court by amending their pleadings, accounting for all claims, clearly defining the proposed classes and the claims within them, and cleaning up their arguments before revisiting class certification. And if another motion for class certification is submitted, we hope that the parties will assist the court in providing a sufficiently clear and rigorous analysis regarding certification.

### III. CONCLUSION

For the reasons stated above, the district court abused its discretion in certifying the Tow Class and the Vehicle Disposal Class. We VACATE and REMAND for further consideration.