In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 21-8028

JOSEPH SIMPSON, *et al.*,

*Plaintiffs-Petitioners*,

*v.*

THOMAS J. DART, *et al.*,

*Defendants-Respondents*.

---

Petition for Permission to Appeal from the
United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-00553 — **Sharon Johnson Coleman**, *Judge*.

---

SUBMITTED SEPTEMBER 27, 2021 — DECIDED JANUARY 6, 2022

---

Before EASTERBROOK, WOOD, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Joseph Simpson applied to work as a Correctional Officer at the Cook County Department of Corrections four separate times between 2014 and 2017. The Department declined to hire him each time. Simpson believed the hiring practices underlying these rejections violated his rights—and those of other unsuccessful Black applicants—under Title VII of the Civil Rights Act. Invoking

theories of both disparate treatment and disparate impact, Simpson's class action complaint alleged that, through the use of a five-step hiring process for correctional officers, the Department of Corrections both intended to discriminate against Black applicants and succeeded in producing that discriminatory result.

The district court denied Simpson's motion for class certification, finding that none of his proposed classes—a general class of all unsuccessful applicants and five subclasses of candidates dismissed at each step of the hiring process—satisfied Rule 23(a)(2)'s requirement that they present "questions of law or fact common to the class." But the district court's analysis seems at times to have conflated and merged Simpson's disparate *impact* claims with his disparate *treatment* claims for intentional discrimination. While disparate treatment claims may require a more searching commonality inquiry along the lines of that performed by the district court, disparate impact claims most often will not: the common questions are whether the challenged policy has in fact disparately impacted the plaintiff class and, if so, whether that disparate impact is justified by business necessity.

Because the district court's analysis did not clearly delineate its reasoning for declining to certify three of Simpson's subclasses on a disparate impact theory, we grant Simpson's petition for Rule 23(f) review, vacate the denial of class certification as to these three subclasses, and remand to allow the district court to reconsider whether they should be certified.

# I

## A

The Cook County Sheriff's Office oversees all operations at the Cook County Department of Corrections, including the hiring of correctional officers. That hiring authority is delegated in large part to an administrative body within the Sheriff's Office known as the Cook County Sheriff's Merit Board, although the Sheriff's Office itself makes the final hiring decision. Both entities—the Sheriff's Office (through Sheriff Thomas J. Dart in his official capacity) and the Merit Board—are defendants in this case, as is Cook County itself.

The Department of Corrections considers applicants by employing a five-step hiring process. Applicants may be eliminated from contention at any step. The Merit Board controls the first four steps—(1) an initial written exam; (2) a written situational exam; (3) a physical fitness test; and (4) a more discretionary "final review," which itself appears to consist of a background check, drug testing, and multiple interviews. Applicants who successfully complete each step are certified by the Merit Board as "eligible for hire" and proceed to step (5), a discretionary "file review" (and a polygraph test) conducted by the Sheriff's Office, which then makes the final hiring decision.

Simpson's complaint alleged that the defendants instituted and implemented this multistep process to discriminate against Black applicants. See 42 U.S.C. § 2000e-2(a)(1) (imposing liability on employers who "fail or refuse to hire … any individual … because of such individual's race, color, religion, sex, or national origin"). The complaint alternatively alleged that, regardless of the defendants' intent, the policies

did in fact disparately impact Black applicants, who were purportedly hired at significantly lower rates than white applicants. See *id.* § 2000e-2(k)(1)(A)(i) (prohibiting the use of "a particular employment practice that causes a disparate impact on the basis of race, color, sex, or national origin" and that is not "job related for the position in question and consistent with business necessity"). In discovery, Simpson produced statistical evidence that he believes proves that, at each of the five steps of the hiring process, Black applicants received rejections more often than white applicants.

B

Simpson first moved to certify just one class of all unsuccessful Black applicants dating back to March of 2015. He later sought to add five subclasses for candidates rejected at each of the five challenged steps of the hiring process. The district court permitted Simpson to amend his complaint to add these proposed subclasses before it considered the motion for class certification. The defendants had a full and fair opportunity to oppose class certification.

The district court acknowledged that Simpson's proposed classes alleged violations based on theories of both "disparate impact and discriminatory intent." In denying the certification motion "in its entirety," the court's analysis focused solely on Rule 23(a)(2)'s "commonality" requirement—that there must exist "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As to each of Simpson's proposed classes under both his disparate impact and disparate treatment theories, the court determined that no such common questions existed—a finding preventing certification. At no point, though, did the district court differentiate or

separate its analysis of Simpson's disparate impact claims from its consideration of his disparate treatment claims.

Simpson has not sought review of the district court's refusal to certify either the original combined class or the subclasses for steps (4) and (5) of the hiring process—the Merit Board's final review and the Sheriff's Office's file review. He instead seeks interlocutory review only as to the subclasses for steps (1), (2), and (3)—the initial written exam, the written situational exam, and the physical fitness test. We refer to these together as the exam subclasses.

The district court analyzed steps (1) and (2), the two written exams, together and found that the class plaintiffs had "made little effort to establish that these standardized tests are racially biased." The court observed that these tests had "been validated in other jurisdictions and by agencies throughout the country." And while the plaintiffs had presented statistical evidence indicating that Black applicants were rejected at higher rates than white applicants at both steps, the district court discredited this evidence because it "did not control for any racially neutral factors." The district court's analysis of step (3), the physical fitness test, was much the same. The court found that the plaintiffs had failed to "present evidence that the physical ability test was administered in a racially-biased manner," and instead pointed only to statistical disparities in the pass rates for white and Black applicants.

With his motion for class certification denied in its entirety, Simpson invoked Federal Rule of Civil Procedure 23(f) and sought our review. He contends that the district court erred in finding that, as applied to the three exam subclasses, his disparate impact claims did not present a common question capable of classwide determination.

## II

Promulgated by the Supreme Court pursuant to 28 U.S.C. § 1292(e), Rule 23(f) grants courts of appeals discretion to "permit an appeal from an order granting or denying class-action certification." Fed. R. Civ. P. 23(f). We have often exercised that discretion where "deciding the appeal would clarify class action law." *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1076 (7th Cir. 2014) (citing *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 835 (7th Cir. 1999) (explaining that the exercise of Rule 23(f) review is appropriate where "an appeal may facilitate the development of the law")). This is such a case. So we grant Simpson's petition and vacate the district court's judgment as to the three exam subclasses, making two observations to help inform the district court's analysis on remand.

## A

First, Rule 23(a) enumerates four—and only four—requirements for class certification: numerosity, commonality, typicality, and adequacy of representation. See Fed. R. Civ. P. 23(a)(1)–(4). Likelihood of success on the merits is not among them. See *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002). From there a class must fall within one of three permissible "types of class actions" set out in Rule 23(b). And if a class plaintiff satisfies all the requirements of Rule 23(a) and Rule 23(b), the class *must* be certified, even if it is sure to fail on the merits. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399–400 (2010) (explaining that, "in each and every case where the Rule's criteria are met," the plaintiff "may bring his claim in a class action if he wishes") (cleaned up). Put another way, properly certified classes can lose as well as win. See *Bennett v. Dart*, 953 F.3d 467, 469 (7th Cir. 2020); *Schleicher v. Wendt*, 618 F.3d 679, 686 (7th Cir. 2010).

To be sure, the Supreme Court has recognized that the "rigorous analysis" required at the class certification stage may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). But the Court has also taken care to emphasize that "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Put most simply, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.*

Front and center here is the second of Rule 23(a)'s four requirements—commonality. A plaintiff may represent a class only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A Title VII plaintiff can establish liability on a disparate impact theory by pointing to an employment policy that "causes racial discrimination" and "is not justified by business necessity." *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 489 (7th Cir. 2012); see also *Ricci v. DeStefano*, 557 U.S. 557, 577–78 (2009). To certify a disparate impact class, then, the plaintiff's claims as to those three elements must be based on "common contention[s]" that are "capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350.

The first element—identifying a discrete employment policy to challenge—often presents difficulties for proposed disparate impact classes. In *Wal-Mart*, where the only "policy" the plaintiffs identified was one of "allowing discretion" in hiring decisions, the Court recognized the need for some merits inquiry at the class certification stage: a court must know

*how* that discretion is exercised to know whether there exists "a common mode of exercising discretion that pervades the entire company." *Id.* at 355–56. In the end, the Court concluded that because the plaintiffs could not show that Wal-Mart supervisors exercised their challenged discretion in a common way, "it [would] be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Id.* at 352 (emphasis in original).

This difficulty may have doomed certification of Simpson's subclasses (4) and (5), as both the Merit Board's final review and the Sheriff's Office's file review processes seem to involve multiple decisionmakers exercising discretion in various unknown ways. We need not decide the issue, because Simpson has limited his petition to subclasses (1), (2), and (3)—the three exam subclasses. And those subclasses, it seems, concern challenges not to the exercise of discretion by multiple actors but to the uniform administration of standardized tests to each putative class member. This sort of "single [companywide] policy was the missing ingredient in *Wal-Mart*." *Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 898 (7th Cir. 2012); see *McReynolds*, 672 F.3d at 490. But it may not be missing here.

Where, as here, a plaintiff identifies a discrete employment policy that allegedly results in discrimination, Title VII disparate impact claims are well suited for classwide adjudication: the policy either disparately impacted the plaintiff class or it did not. To put it even more in terms of this case, once Simpson has identified the three challenged exams, the ensuing Rule 23 analysis requires no inquiry into the merits to determine that the remaining two elements of his disparate

impact claims almost necessarily present questions common to the class—whether those exams in fact caused a disparate impact and, if so, whether the use of the exams was justified by business necessity. See *McReynolds*, 672 F.3d at 489 (observing that "whether [the challenged policy] causes racial discrimination and whether it nonetheless is justified by business necessity are issues common to the entire class and therefore appropriate for class-wide determination").

Accordingly, the district court's analysis was not "limited to those aspects of the merits that affect the decisions essential under Rule 23." *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1005 (7th Cir. 2019) (quoting *Schleicher*, 618 F.3d at 685). To assess whether Simpson's claims presented common questions, the district court did not need to consider whether Simpson's statistical experts controlled for racially neutral factors or whether the tests had been validated for use at other departments. These considerations go not to commonality but instead to whether the exam subclasses can ultimately succeed on the merits. We cannot know at this stage. But what we can say is that, as to each subclass, the answer seems likely to be the same for each class member. That is all that Rule 23(a)(2) requires. See *Wal-Mart*, 564 U.S. at 352; *In re Allstate Corp. Securities Litig.*, 966 F.3d 595, 604 (7th Cir. 2020) ("At class certification, the issue is not whether plaintiffs will be able to prove these elements on the merits, but only whether their proof will be common for all plaintiffs, win or lose.").

B

That brings us to our second observation. Some of the confusion in the district court's opinion appears to stem from not separating its analysis of Simpson's *disparate impact* claims from its assessment of his *disparate treatment* claims.

The claims are not one and the same. Indeed, today they root themselves in different provisions of Title VII. See 42 U.S.C. § 2000e-2(a)(1) (disparate treatment); *id.* § 2000e-2(k)(1)(A)(i) (disparate impact).

Commonality may be harder to establish for disparate treatment claims, as those claims require "proof of intentional discrimination, which is not an element of a disparate impact claim." *McReynolds*, 672 F.3d at 483. Simpson has not petitioned for review of the class certification decision as to his disparate treatment claims. Accordingly, we can assume without deciding that it was reasonable for the district court to find that Simpson had not shown that the question of intent was a common one that would yield a common answer across each proposed class. See *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) ("Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements … by a preponderance of the evidence.") (citations omitted).

Even so, class certification is not an all-or-nothing proposition. Certification may be appropriate as to some of the class's claims but not others. This observation flows from the text of Rule 23 itself: an order certifying a class "must define the class *and the class claims, issues, or defenses*." Fed. R. Civ. P. 23(c)(1)(B) (emphasis added). If a class's definition was synonymous with its claims, this language would be superfluous. Instead, the "class" takes its definition from the people in it and the period of time during which the relevant conduct occurred, and the "class claims" are the legal claims for which the class satisfies all of Rule 23's certification requirements. See *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of America*, 453 F.3d 179, 187–88 (3d Cir. 2006) (holding that a Rule 23(c)(1)(B)

certification order must include two elements: "(1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis").

Sometimes those requirements may be satisfied as to some of the class representative's claims but not others. Only the former become "class claims." See Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."). So the fact that the district court found that Simpson could not show that, as to the three exam subclasses, his disparate *treatment* claims were "capable of classwide resolution," *Wal-Mart*, 564 U.S. at 350, does not mean that the same must be true for his disparate *impact* claims.

For their part, the defendants insist that the district court's failure to separate the disparate impact and disparate treatment claims is Simpson's own fault. Simpson, they say, conflated his disparate impact and disparate treatment theories and focused his efforts primarily on the latter. The defendants therefore ask us to find the disparate impact claims waived.

We decline to do so. Simpson's disparate impact claims have been in this case since its inception, and he briefed them in his motion for class certification. Nothing prevents a Title VII plaintiff from alleging both that a challenged policy caused a disparate impact and that it was intended to do so. And the district court recognized that Simpson had done just that, calling his claim one for "disparate impact and discriminatory intent."

But the district court's analysis did not reflect that recognition. When conducting class certification analyses, district courts should assess the four Rule 23(a) factors as to each of the putative class claims. See *Santiago v. City of Chicago*, 19 F.4th 1010, 1017 (7th Cir. 2021) (vacating a class certification order where the district court "analyzed the proposed classes under each provision [of Rule 23], but never made clear which claims the analyses refer to"). A one size (or one claim) approach is at odds with the "rigorous analysis" required at the class certification stage. *Wal-Mart*, 564 U.S. at 351. Instead, as we recently explained, a district court should begin by identifying the elements of the plaintiff's various claims: "[o]nly by properly circumscribing the claims and breaking them down into their constituent elements can a district court decide which issues are common, individual, and predominant." *Santiago*, 19 F.4th at 1018.

*          *          *

We GRANT Simpson's petition, VACATE the denial of class certification in part, and REMAND for the district court to reconsider certification of the three exam subclasses in light of our observations and the remaining Rule 23 factors. Whether Simpson's three exam subclasses will ultimately merit certification is a question for the district court to answer in the first instance.